COMMONWEALTH MUTUAL FIRE INSURANCE COMPANY *vs.*
WILLIAM KNABE AND COMPANY MANUFACTURING
COMPANY.

Suffolk.   March 14, 1898. — May 20, 1898.

Present: FIELD, C. J., HOLMES, KNOWLTON, MORTON, & LATHROP, JJ.

*Fire Insurance — Mutual Company — Assessment — Agency — Lex Loci*
*Contractus — Acceptance — Waiver of Payment of Premium.*

A., who did business in Maryland, requested B., an insurance broker in New York,
to procure insurance for him on certain property, and B. requested C., another
broker in New York, to obtain such insurance for A. in a mutual insurance
company organized under the laws of, and doing business in, this Common-
wealth, but not authorized to do business in Maryland or in New York. C.
sent an application for the insurance to D., the manager of the company here,
which was accepted by the company, and a policy was written here accordingly
and sent to C., to whom the premium was charged, he having an open account
with D. C. delivered the policy to B., who mailed it to A., by whom a check
for the premium was sent to B., who subsequently sent to C. a check payable
to the order of the company for the premium, which was mailed to D. C. was
paid by D. a commission for his services out of the commission allowed D. by
the company, and B. was paid by A. for his services. *Held*, that C. must be
regarded as the agent of A.; and that the contract contained in the policy was
a Massachusetts contract.

The fact that a policy of insurance in a mutual fire insurance company contains
terms and conditions not included in the application therefor, if they are not
unusual or extraordinary, does not render necessary the acceptance of the
policy by the assured in order to make it binding on him, but the contract
becomes complete on the delivery of the policy, without any further assent on
his part.

An insurance company may waive the payment of the premium in cash upon
delivery of the policy, and the policy will then take effect as if it contained no
provision requiring such payment.

CONTRACT, to recover the amount of six assessments upon the
defendant as a policy holder in the plaintiff corporation. The
case was submitted to the Superior Court, and, after judgment
for the plaintiff, to this court, on appeal, upon agreed facts, in
substance as follows.

The plaintiff was a mutual fire insurance company organized
under the laws of this Commonwealth, and was authorized by
statute to make insurance upon property located in any part of
the United States or Canada. It issued six policies of insur-

ance to the defendant on property situated in Maryland, in which State the plaintiff was not authorized to do business under its laws. On March 19, 1895, the plaintiff was enjoined by this court from doing further business, and subsequently a receiver was appointed. On July 19, 1895, a petition was filed in this court by the president of the plaintiff, praying that the court would examine an assessment previously voted by the directors of the company and matters connected therewith, and would ratify the assessment with such amendments as might be necessary. Upon this petition an order of notice was issued, returnable in three weeks, and published as therein directed. At the hearing upon the petition on August 19, 1895, the application was referred to an auditor, who was directed to appoint a time and place to hear all parties in the matter of the assessment, and to give personal notice thereof in writing to the insurance commissioner, and, through the post office or by publication, as he deemed practicable, to all parties liable to such assessment, and to report upon the correctness of the assessment and all matters connected therewith. Thereupon due notice was given by the auditor as directed, hearings were had, and a report was made by him. Whereupon, after due notice to all parties in interest, giving them an opportunity to be heard, this court, by a decree of March 5, 1896, among other things, ordered an assessment of $250,000, and directed the officers of the company to vote the same in legal form, which the directors proceeded to do.

Afterwards, on March 25, 1896, the court confirmed the assessment of $250,000, which was subsequently made up in detail against the different policy holders of the company subject to assessment; and by a decree dated December 9, 1896, the assessment was ratified, confirmed, and established as computed and made up upon the persons and for the amounts which appeared in the schedules annexed to the decree. By such schedules it appeared that the defendant was assessed, on six different policies, the total sum of $474.05. The decrees ordering and confirming the assessment were made after the usual publication of notices as directed by the court. Written notices of the assessments were duly sent to the defendant on July 2, 1896, demanding payment thereof. The office of the plaintiff

was situated in Boston, where it did its business, and it had no office or agent in the State of Maryland, and none outside of Massachusetts, except in the State of North Carolina, unless it otherwise appears from the agreed facts. The insurance was effected through Tate and Cornwall, insurance brokers of New York City. The plaintiff was not admitted to do business in the State of New York. Blake and Taylor were the managers of the plaintiff, receiving for their services a certain per cent of the gross receipts, out of which they paid all expenses.

The defendant requested Glover and Company, insurance brokers of New York, to obtain for it insurance on the property described in the policies. Glover and Company applied in turn to Tate and Cornwall, requesting them to obtain such insurance for the defendant in the plaintiff company, and as a result of the requests Tate and Cornwall, with the knowledge of Glover and Company, sent applications for insurance by mail to Blake and Taylor, directed to the office in Boston, these applications stating the amount of insurance desired, the rates at which the risks were to be written if accepted, the premiums to be paid, the dates upon which the risks were to begin, and the time for which they were to continue. These applications also contained descriptions of the property upon which the insurance was to be placed, which applications were received in Boston by Blake and Taylor, acted upon and accepted by the plaintiff, whereupon policies were written in accordance with the terms set forth in the applications, dated and executed by the proper officers of the company in Boston, and transmitted by mail to Tate and Cornwall in New York.

The policies contained the following provision : "In consideration of        dollars, to them paid by the insured, hereinafter named, the receipt whereof is hereby acknowledged, and the agreement by the insured, as a condition of this policy, that the said insured, or their legal representatives, shall pay in addition to said cash premium all such sums as may be assessed by the directors of said company, pursuant to the laws of the Commonwealth of Massachusetts, but not in any event to exceed three times the amount of said cash premium, do insure the William Knabe & Co. Manufacturing Company, of Baltimore City, and their legal representatives, against loss or damage by

fire, to the amount of          dollars"; which provision was uniform in all policies issued by the plaintiff; and in one policy was stamped the following additional provision : " It is a condition of this policy that, if at the time of loss the assured shall hold any policy of this or any other company on the property hereby insured subject to conditions of co-insurance or average, this company's liability herein shall be limited thereby to the same extent as though such clause were contained in this policy." This last provision is one that is frequently, but not uniformly, inserted in insurance policies.

The broker knew at the time the applications were sent what would be the uniform provisions in the policies not named in the applications, and also knew that the additional provision inserted in one of the policies as above quoted was frequently inserted in policies. The applications were signed by Tate and Cornwall, the signature being impressed with a rubber stamp, and being in the following form : " Tate & Cornwall, 59 William St., New York."

At the time the policies were made out the premiums were charged to Tate and Cornwall, with whom Blake and Taylor had an open account, and Tate and Cornwall were accustomed at intervals to send checks to Blake and Taylor in payment of balances due and to receive such checks from them. Tate and Cornwall received the policies from the mail in New York and delivered them to Glover and Company, who sent them from New York by mail to the defendant in Baltimore. The first policy was issued on January 1, 1894; the second and third were issued on March 27, and the last three on March 28, 1894.

The defendant, some time after receiving the policies, sent checks to Glover and Company in payment of the premiums, and Glover and Company subsequently sent to Tate and Cornwall checks payable to the order of the plaintiff in payment of the premiums. These checks were transmitted by mail from New York to Blake and Taylor in Boston, and received by the latter, the one in the payment of the premium on the first policy on February 28, 1894, the one in payment of premiums on the second and third policies on June 29, 1894, and the one in payment of premiums on the last three policies on June 30, 1894. Blake and Taylor paid Tate and Cornwall for their services in obtain-

ing and forwarding such applications a commission on the premiums of all policies issued by the plaintiff on the applications, the commissions allowed such brokers being taken out of the commission allowed them by the plaintiff in compensation for their services, and Glover and Company were paid for their services by the defendant.

The defendant is a corporation organized under the laws of Maryland, having its usual place of business in Baltimore in that State, but having property in this Commonwealth.

*S. H. Hooper*, for the defendant.

*W. B. Stevens*, for the plaintiff.

MORTON, J.   There can be no question that Blake and Company were the agents of the plaintiff, and that Glover and Company were the agents of the defendant.   One question is whether Tate and Cornwall were the agents of the plaintiff or of the defendant.   If they were the agents of the defendant, or were not the agents of the plaintiff, then, subject to certain considerations in regard to the terms of the policies which will be referred to later, the policies are Massachusetts contracts.   If they were the agents of the plaintiff, it might still be a question whether the policies should not be regarded as Massachusetts contracts.   If the policies should be regarded as New York contracts, then the question would arise whether, the insurance being on property situated in Maryland, they are rendered invalid by the laws of New York.   If the policies should be regarded as Maryland contracts, the plaintiff does not contend that it is entitled to recover.

There is nothing to show that Tate and Cornwall were the authorized agents of the plaintiff.   They are described as insurance brokers.   They were requested by Glover and Company to obtain insurance on the property described in the policies. Glover and Company also requested them to obtain the insurance in the plaintiff company.   In forwarding the application, they clearly acted for Glover and Company, who in turn acted for the defendant.   They did not solicit the insurance for the plaintiff from Glover and Company, but Glover and Company requested them to procure insurance in the plaintiff company for the defendant.   It seems to us plain that Tate and Cornwall must be regarded as the agents of the defendant.   The fact that there were open accounts between Tate and Cornwall and

Blake and Company, and that the premiums were charged to the former, who were paid by the latter out of the commissions which they were allowed by the plaintiff, has no tendency to show that they were its agents, nor has the fact that the checks received by Tate and Cornwall from Glover and Company, and sent by them to Blake and Company, were payable to the plaintiff's order, any such tendency. The plaintiff is a Massachusetts company. The offers contained in the applications were received and accepted by it in Boston. The policies were made and signed there. The contracts contained in the policies were to be performed there. When the policies were mailed at Boston to the defendant's agents at New York, if not before, the contracts were complete, and must be regarded, we think, as Massachusetts contracts. *Brauer* v. *Shaw*, 168 Mass. 198. *Seamans* v. *Knapp-Stout Co.* 89 Wis. 171. *Western* v. *Genesee Ins. Co.* 2 Kernan, 258. *Bailey* v. *Hope Ins. Co.* 56 Maine, 474. *Hartford Ins. Co.* v. *Lasher Stocking Co.* 66 Vt. 439.

This view renders it unnecessary to consider whether the policies would have been invalid as New York contracts, or what the effect would have been if Tate and Cornwall had been the agents of the plaintiff. The defendant contends that the policies contained terms and conditions not included in the applications, and that therefore they did not become binding until accepted by the defendant or its agents, which could not have been till they were received in New York. The applications not only did not contain the terms and conditions which the defendant says they did not, but, so far as appears, they did not contain many other terms and conditions which are in the policies. Ordinarily, it is not expected that an application for insurance will contain all of the terms and conditions which are included in the policy when it is issued. Certain particulars are named, others are not. The application is for such insurance on such terms and conditions as, in view of the particulars submitted, the company sells. It is to be presumed that, as in other cases, the purchaser has made himself acquainted with what he is purchasing. On the delivery of the policy therefore, the contract becomes complete without any further assent on the part of the insured. Possibly, if the policy contains any extraordinary provisions such as are not generally or often found

in policies, the insured on receiving it might have a right to rescind. But that was not the case here. Moreover the plaintiff is a mutual company. The provision in the policy, that the insured should in addition to the premium pay all such sums as might be assessed by the directors, is a usual provision in mutual policies. But whether so or not, the defendant by becoming a member of a mutual company became bound to pay a proportional share of its liabilities. The plaintiff could waive the payment of the premium in cash upon delivery of the policy, and in such case the policy would take effect on delivery, and would stand as if there were no provision in it in regard to the payment of the premium in cash upon delivery. The provision contained in one of the policies in regard to co-insurance or average is not shown to have been an unusual or extraordinary provision, and it appears that the brokers who were acting for the defendant knew that it was frequently inserted in policies, and knew when the applications were sent what the uniform provisions of the policies issued by the plaintiff were, and for aught that appears made no objection.

We think that, on the whole case, the judgment of the Superior Court was right, and should be affirmed. *So ordered.*