GINNERS' MUT. UNDERWRITERS' ASS'N
v. FISHER et al.   (No. 1658.)

(Court of Civil Appeals of Texas. Amarillo. April 28, 1920. On Motion for Rehearing, June 2, 1920.)

1. Insurance ⟨⟩131(1)—Entire contract may be oral, though application written.

An insurance contract may be entirely oral and is not objectionable as varying the terms of the written application for insurance.

2. Insurance ⟨⟩130(3)—Distribution among items of property at insured's request held not a counter offer.

Where an applicant for fire insurance covering a cotton gin agreed with a soliciting agent that the company should distribute the insurance in the policy among various items of property particularly described therein, and the company did so and sent the policy to the applicant, such apportionment, if fairly made, could not, especially upon insurer's insistence, prevent the policy from being an acceptance instead of a counter offer to insure.

3. Insurance ⟨⟩130(3)—That policy provides for payment to lienors held not to make it counter offer instead of acceptance.

Where an application for fire insurance covering a cotton gin did not directly specify that loss was to be payable to lienors as their interests might appear and the policy as written provided for payment of loss to such lienors, such fact did not make the policy a counter offer not binding until acceptance by insured; there being no variance in fact between the application and the policy, and the application not being presumed to contain all the details of the policy.

4. Insurance ⟨⟩130(7)—Retention of fire policy without opposition beyond reasonable time held acceptance.

Where a fire insurance policy was delivered to insured for his acceptance, as insurer claimed, and was retained by insured without objection beyond a reasonable time, such retention constituted an acceptance of the policy, even if the policy be construed to constitute a counter offer and not an acceptance of an offer contained in the application for insurance.

5. Insurance ⟨⟩668(15)—Waiver of payment of premium by insurer held for jury.

In an action on a fire insurance policy covering a cotton gin, where it appeared that the policy had been delivered together with a bill for the first premium which had not been paid prior to the fire, evidence held to make the issue of waiver of payment by insurer a question for the jury.

6. Insurance ⟨⟩141(2)—Payment of first premium waived by unconditional delivery of policy.

Unconditional delivery of a policy, by its terms requiring payment of the premium as a condition precedent to its taking effect, is sufficient to constitute a waiver of such term; it being presumed from such delivery that the insurer intended to extend at least a temporary credit to insured.

7. Insurance ⟨⟩136(3) — Delivery of policy held not made conditional by agreement to return policy if not satisfactory.

Where a fire insurance policy was delivered to insured on condition that it should be promptly returned if not satisfactory, with bill for premium inclosed with request for remittance if the policy was satisfactory, the condition was not one of payment and did not have the effect of making the delivery of the policy conditional.

Error from District Court, Collin County; T. E. Wilcox, Judge.

Action by R. C. Fisher against the Ginners' Mutual Underwriters' Association. Judgment for plaintiff, and defendant brings error. Affirmed.

Locke & Locke, of Dallas, for plaintiff in error.

White, Cartledge & Wilcox, of Austin, and E. W. Merritt, of McKinney, for defendant in error.

BOYCE, J. Defendant in error, R. C. Fisher, brought this suit, on a fire insurance policy, issued by the plaintiff in error, the Ginners' Mutual Underwriters' Association, insuring a gin owned by the said R. C. Fisher against loss by fire. The defendant pleaded that it was not liable because there was no completed contract of insurance, in that the policy of insurance referred to as being issued by it had not been accepted by the plaintiff, and further because it was provided by the terms of the application for insurance, the by-laws of the association, and the policy itself, that the insurance "should not become effective until the premium is paid," and the said premium had not been paid on the policy issued, as required. The plain-

tiff, in a supplemental petition, alleged that the said policy was delivered and accepted by him so as to become a completed and binding contract, and that the defendant waived the provision of the contract requiring prepayment of the premium. The policy contained a provision that loss should be payable to the Walter Tipps Company and the Gillett Gin Company, as their interests might appear. Such parties held liens on parts of the property and were brought into the suit for the purpose of having their interests determined. Judgment was rendered for the amount of the face of the policy and part of the judgment made payable to one of the said lienholders, the other one disclaiming.

On August 23, 1916, the insurance association's agent approached the said R. C. Fisher, and solicited insurance on his gin, situated at Frisco, Tex. The said agent was only a soliciting agent and could not himself write the insurance, his duties being to secure applications for insurance and transmit them to the company for issuance of the policy thereon in the event the application should be approved. The said R. C. Fisher signed and delivered to the said agent a written application for insurance. This application did not state the rate of the premium, the amount of insurance desired, nor how it was to be distributed as to the buildings and the machinery therein, which were to be covered in separate items by the policy. There were no blanks in the form of the insurance application for such statements. The application did contain questions, answers to which were filled in by the said Fisher and the agent, which called for a description of the various items of property to be covered by insurance, the value thereof, etc. The application also called for information as to liens on the property and the names of the holders thereof. The soliciting agent informed plaintiff that the company would not insure the property for more than $5,000, and it was understood in effect that the policy was to be for this amount if the company was willing to insure it for said sum. It was also understood that the company would distribute the insurance in the policy that would be issued. The agent informed the plaintiff that the rate would be about 3 per cent. A form of the policy which was susequently issued was written on the same paper with the application and preceded it. This form of policy purported to be a "standard fire insurance policy form." The application was forwarded to the secretary of the company at Tyler, Tex., by the soliciting agent, in a letter written by him, which contained the statement that the applicant wanted $5,000 insurance, and which gave a description of the property and the value of the items thereof. The secretary of the company thereupon issued a policy on the property for $5,000, distributing the amount on various items of the property, par-

ticularly described in the policy. The rate named in the policy was 3 per cent. It was dated August 24, 1916, and was for the term of one year from date. A description of the items of property with the statement of the amount of insurance thereon was contained in a sheet termed "Cotton Gin Form," attached to this policy. This form contained an agreement that the loss should be payable to the Walter Tipps Company and Gillett Gin Company, as their interests might appear, and also contained other warranties in respect to providing means for the protection against and control of fire on the premises. This form was not attached to the form of policy on the application at the time it was signed by Fisher. The secretary of the company sent this policy, duly signed and attested, to the plaintiff, by mail, on August 28th, and inclosed therewith a letter addressed to the plaintiff of said date, reading as follows:

"We have your application of the 23rd instant to our Mr. Allison, and in reply we are handing you herewith policy No. 41649, for $5,000.00, for the year ending August 24, 1917, and bill for the premium, $150.00, which amount you will please remit to us if the policy is satisfactory; if it is not satisfactory kindly return it promptly and oblige."

The bill referred to was in part as follows:

Statement.

Tyler, Tex., August 24, 1916.
Mr. R. C. Fisher, Frisco, in account with the Ginners' Mutual of Texas, for fire insurance policy No. 41649, for $5,000.00.
To premium due on above policy, $150.00.

The policy was duly received by the plaintiff. He was very busy at the time and merely glanced over a part of it, but considered it satisfactory, and placed it on his desk as a reminder that he should remit the premium when he should have the time to attend to it. Remittance was not made, and no further communication passed between the parties until the gin was destroyed by fire September 17th. The jury found in answer to special issues submitted that the policy was accepted by plaintiff as satisfactory; that he received and inspected the policy and intended to keep it and pay the premium thereon; and that the defendant waived the provision of the policy to the effect that it should not become a binding contract upon either party until the first premium was paid, and intended to extend credit to plaintiff for the premium due if said policy was satisfactory and accepted by plaintiff, upon its receipt.

The assignments presented are to the effect that there was no evidence sufficient to authorize the submission of any issue to the jury, and that the plaintiff in error was entitled to a peremptory instruction for the reasons already referred to in the statement of the pleading: (1) That there was no completed contract; and (2) that the policy was

not effective because the premium had not been paid. The argument made in support of the first contention is that the offer made by the plaintiff in the application for insurance was not sufficiently definite to create a contract by the mere acceptance thereof, because such offer did not contain the essentials of a definite contract, in that the amount of insurance, the rate, the distribution thereof on the specific items and the beneficiaries, were not stated; that the policy therefore constituted an offer because it first contained definite provisions as to elements on which it was essential that the minds of the parties should meet before a contract could be made, and also because the policy varied from the terms of the offer; that since the policy was not the acceptance of an offer, but the offer itself, it was necessary that it be accepted and such acceptance communicated to the insurance company before the contract could be completed. If we are to be confined to the written application to ascertain the terms of the offer, it is true that the application does not contain all of the essential terms of the contract, so that its mere acceptance might complete the contract; but we think that the oral understanding had between the plaintiff and the soliciting agent may be considered as a part of the application. There is no requirement of law that the application for insurance be in writing. Cooley's Briefs on Insurance, p. 409, and Supplement, § 409a.

[1, 2] It is well settled in this state that the entire insurance contract may be oral. Such oral understandings are not objectionable because they vary the terms of the written application, in this case, since they were in reference to matters with which the application did not attempt to deal; and the very fact that the application contains no reference to essential elements of the contract shows that it was not intended to be the sole expository of the negotiations for insurance up to the point of communication of the application, or offer for insurance, to the company. The understanding that the applicant wanted insurance in the sum of $5,000, that the company was to distribute the amount of insurance on the various items of property, the description of which with its value was given in the application, and that the rate of insurance would be about 3 per cent., are therefore to be taken as a part of the application. But plaintiff in error insists that the agreement that the company should distribute the insurance would prevent the policy which did so apportion the insurance from being an acceptance. We do not think so if the apportionment were fairly made, and it certainly would not be permissible for the company to insist that it was not.

[9] The plaintiff in error also contends that the provision for payment of loss to the Walter Tipps Company and the Gillett Gin Company, as their interests might appear, is at variance from the terms of the offer and constitutes the policy a counter offer. The policy was delivered as being in compliance with the offer, and it might again be answered that the plaintiff in error cannot with good grace claim that its terms constitute a variance from the terms of the offer. But we do not think it is necessarily a variance. The application is not presumed to contain the details of the provisions of the policy.

"The application is for such insurance on such terms and conditions as, in view of the particulars submitted, the company sells. It is to be presumed that, as in other cases, the purchaser has made himself acquainted with what he is purchasing. On the delivery of the policy, therefore, the contract becomes complete without any further assent on the part of the insured. Possibly, if the policy contains any extraordinary provisions such as are not generally or often found in policies, the insured on receiving it might have a right to rescind." Commonwealth Mutual Fire Insurance Co. v. Knabe, 171 Mass. 265, 50 N. E. 516.

[4] The provision for loss payable to lienholders is not unusual, and, when the application disclosed the existence of such lienholders, the applicant might be held to have impliedly assented to the insertion in the policy of such provision as the company usually inserted in the policy in such cases. Our statutes provide that the insurance commission shall establish, and the insurance company shall use, uniform policies, applicable to the various risks. Vernon's Sayles' Ann. Civ. St. 1914, art. 4891. This provision of the statute would, we take it, apply to mutual companies, article 4907k. If this be true, it is to be presumed that the form used, including this provision of the policy, was that prescribed by the insurance commission, and that all the parties contracted in reference to it. But, even if the terms of the offer were incomplete, because the matter of the apportionment of the insurance was left to the company, or if it be true that the policy did not conform strictly to the terms of the offer, yet we think that the retention of the policy without objection and beyond a reasonable time would constitute an acceptance thereof. Joyce on Insurance, §§ 55b, 66g, 66i; Cooley's Briefs on Insurance pp. 457 and 459; same sections in Supplement; Ribble v. Roberts, 180 S. W. 620; Sheldon v. Atlantic Fire Insurance Co., 26 N. Y. 460, 84 Am. Dec. 213; Swing v. Marion Pulp Co., 47 Ind. App. 199, 93 N. E. 1004; Remmel v. Griffin, 81 Ark. 269, 99 S. W. 70. The policy was sent to plaintiff on his order and as in fulfillment of its terms. Under such circumstances, the applicant for the policy is not in the same position as one to whom goods have been sent without solicitation on his part, as suggested by plaintiff in error in argument; but his position is analogous to

that of the purchaser to whom goods have been sent on order, in which case the recipient of the goods is bound to object within a reasonable time to the goods as not meeting the requirements of his order, otherwise the silent retention of them will be considered as an acceptance. Mechem on Sales, §§ 1374 and 1380.

[5-7] As to the other proposition relied on by appellant, that the policy was not effective because the premium was not paid, we think the evidence sufficient to make an issue of waiver. The application and policy contained the provision as pleaded, but it is not questioned that this provision of the application and the policy might be waived, and the authorities all agree that the unconditional delivery of the policy, which by its terms required payment of the premium as a condition to its taking effect, is sufficient to constitute a waiver of such term; it being presumed from such delivery that the insurer intended to extend at least a temporary credit to the insured. United Benefit Association v. Lawson, 133 S. W. 907; 25 Cyc. pp. 726, 727; Joyce on Insurance, §§ 76 and 79; Cooley's Briefs on Insurance, pp. 482 and 507, and Supplement, §§ 482 and 507. But the plaintiff in error contends that the delivery was conditional. We must look to the terms of the letter accompanying the delivery to determine whether this is true, for, if the provision in the policy itself made the delivery conditional, then there could never be an unconditional delivery of such policy, and the rule stated would be a futile announcement. We have already quoted the letter referred to. The only condition attached to the finality of the delivery is that the policy should be promptly returned if not satisfactory. This condition is not one of payment. As we have seen, a retention of the policy beyond a reasonable time completes the delivery and acceptance. The inclosing of the bill for the premium, with the request that remittance be made if the policy is satisfactory, is not a statement of condition of delivery itself. It is merely a request for payment of the premium that would become due upon the complete acceptance of the policy. We think this issue was properly one for submission to the jury. Sheldon v. Atlantic Fire Insurance Co., supra.

These holdings, as announced, dispose of all the assignmens of error, and result in the affirmance of the judgment.

On Motion for Rehearing.

We may possibly have been mistaken in the conclusion that the provisions of article 4891, R. S., are applicable to mutual companies. See Vernon's Sayles' Ann. Civ. St. 1914, arts. 4907k and 4902. The conclusion is not essential to a decision of the case, and we withdraw it.

We are of the opinion that we correctly disposed of the assignments in our former consideration of the case, and the motion for rehearing will be overruled.