## CONNECTICUT FIRE INS. CO. et al. v. FIELDS. (No. 1878.)

(Court of Civil Appeals of Texas. Amarillo. Jan. 4, 1922.)

**1. Insurance ☞131(1)—Oral agreement to insure against fire is complete and binding contract.**

An oral agreement to insure against fire, being presumed to be made in contemplation of a policy containing the terms and conditions in customary use and impliedly to adopt the same, is a complete and binding contract.

**2. Insurance ☞128(1)—Company refusing to issue policy contemplated by agreement waives right to rely on conditions it might have inserted.**

An insurance company which makes a valid oral agreement to issue a policy, but thereafter wrongfully fails or refuses to do so and denies that any contract exists, waives the right to rely on conditions it might have inserted in the policy.

**3. Appeal and error ☞930(3)—Issues not submitted presumed found in appellee's favor.**

In an action on a parol contract of insurance, where the issues as to whether the person with whom the contract was made was the agent of the company and whether the latter ratified the contract were not submitted to the jury, it must be presumed, on appeal from a judgment for plaintiff, that the court found them in his favor, if there is evidence to sustain such findings.

**4. Insurance ☞89—Subagent has same power to bind insurer as has agent.**

A person empowered by an authorized agent to represent him in negotiations for insurance has the same power to bind insurer as has the agent.

**5. Insurance ☞128(2)—In suit on oral contract to insurer, plaintiff may recover, though policy did not cover loss.**

In a suit on an oral contract to issue a fire insurance policy covering standing grain, plaintiff could recover, though the policies thereafter issued did not cover standing grain.

**6. Insurance ☞131(2)—Agent's authority to make, and company's ratification of, oral contract to insure held established.**

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 4961, an insured who, when he orally contracted for insurance, paid the premium to the agent, who paid it to another, who issued policies pursuant to an arrangement between them, could recover on such contract, where no part of the premium was repaid or tendered to insured; the authority of the agents to make the contract and the ratification thereof by the company being established.

**7. Insurance ☞128(2)—In suit on oral contract to insure, plaintiff need not seek reformation of policies issued pursuant thereto.**

In a suit on an oral contract to insure, plaintiff need not seek reformation of policies issued pursuant thereto.

**8. Judgment ☞256(5)—On jury's finding that insured could recover against company, court was warranted in finding company's agent was not liable.**

In an action on an oral contract to insure, where plaintiff prayed for judgment against the agent with whom the contract was made only in the event he was not entitled to recover against the company, the court, on the jury's finding that he was entitled to recover against the company, was warranted in finding the agent not liable and in entering judgment accordingly.

**9. Appeal and error ☞880(3)—Appellant may not complain of judgment for codefendant.**

Where appellant was liable to the plaintiff in the action, he could not complain that judgment went for his agent, who was a codefendant.

**10. Trial ☞352(4)—No error in refusal to require finding of total value of insured property at time of fire where coinsurance clause not pleaded.**

In an action on an oral contract to insure against fire, where defendants did not plead a 100 per cent. coinsurance clause contained in the policies subsequently issued, and alleged no breach thereof, the court did not err in refusing to require the jury to find the total value of the insured property at the time of the fire.

**11. Insurance ☞335(2)—Itemized inventory of quantity and kind of grain on hand not required under policy covering standing grain burned.**

Under a policy covering grain standing in the field or in shocks, proof by insured of the number of acres thereof, the average yield per acre, the number of acres burned, the price and grade, and the name of the purchaser of that sold, was sufficient to satisfy the requirement of a record warranty clause that insured take a complete itemized inventory of the exact quantity and kind of grain on hand; it being impossible to comply with such requirement until the crop had been threshed, weighed, and graded.

**12. Insurance ☞598—Insured held entitled to recover interest from date of fire.**

In an action on an oral contract to insure against fire, where policies issued pursuant thereto were not made exhibits to defendant's answers, and the latter did not plead that they provided that payment be made 60 days after proof of loss, plaintiff could recover interest from the date of the fire.

**13. Insurance ☞661—Evidence of whole loss sustained admissible where plaintiff had other insurance.**

In an action on an oral contract to insure against fire, where plaintiff had other insurance on the same property, evidence was admissible showing the amount of the whole loss sustained, since defendants would be liable for only their proportional part.

**14. Appeal and error ☞1033(3)—Evidence that other insurance companies paid proportional parts of loss held harmless.**

In an action on an oral contract to insure against fire, where there was no conflict in the

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

evidence as to plaintiff's right to recover the amount for which judgment was rendered, error, if any, in permitting plaintiffs to show that other companies with which he had insurance on the same property had paid their proportional parts of the loss was harmless, being in favor of defendants.

**15. Evidence** ⬤⟲121(2), 244(8)—**Conversations between insured and defendant's agent and between latter and agent by whom policies were written held admissible as res gestæ or admissions.**

In an action on an oral contract to insure against fire, evidence of conversations between plaintiff and the agent with whom the contract was made and between the latter and the agent by whom policies were subsequently written *held* admissible as part of the res gestæ or as admissions by defendant's agents.

Appeal from District Court, Carson County; W. R. Ewing, Judge.

Action by J. W. Fields against the Connecticut Fire Insurance Company and others. Judgment for plaintiff, and defendants appeal. Affirmed.

Thompson, Knight, Baker & Harris and Will C. Thompson, all of Dallas, for appellants.

Chas. C. Cook, of Pampa, for appellee.

HALL, J. The defendant in error, J. W. Fields, as plaintiff below, filed separate suits against the Connecticut Fire Insurance Company and the Northern Assurance Company, joining in each suit G. G. Ordway and C. B. Hedrick. By agreement these suits were consolidated and have been tried and appealed as one action. As against each defendant plaintiff alleged that on July 7, 1919, he owned certain lands, which he described, and the wheat situated thereon, a part of which was standing in the fields, and part, having been cut, was in stacks and shocks; that, being desirous of insuring it, he, for that purpose, applied to the defendant Hedrick for fire insurance upon all of the wheat in its then condition, and was informed that Hedrick was an insurance agent and would insure the wheat as then situated in the sum of $26,400 as to one section and $10,000 as to another section; that plaintiff then paid Hedrick on that date the entire premium due for insurance in that amount for a period of 30 days; that Hedrick informed the plaintiff that said insurance for the amount mentioned would go into effect immediately for the period named; that Hedrick then lived at White Deer, in Carson county, Tex., where section 13; which was a part of the land involved, was situated; plaintiff explained to Hedrick that a large part of the wheat was standing uncut, and that it would have to be insured while standing in the field; on this date Hedrick had an arrangement and contract with Ordway, who was engaged in the insurance business in Amarillo, as agent for various companies, by the terms of which Ordway was to issue policies on orders from Hedrick and had agreed to issue policies on grain cut or uncut, in granaries, bins, threshed or unthreshed, or while standing in the field. On the date mentioned, after plaintiff had paid the premium for the whole amount of insurance to Hedrick, the said Hedrick phoned Ordway at Amarillo and instructed him to issue a fire policy on plaintiff's wheat in the aggregate of $36,400 covering any part of section 13, at which time it was understood between them that plaintiff's wheat on section 13 was partially standing in the field and partially cut and in shocks; that on July 9th defendant Ordway issued four policies covering the wheat on section 13, one for $6,400 in the Standard Insurance Company, one for $1,000 in the International, and one for $5,000 in each of defendant companies; Ordway on that date mailed them to Hedrick at White Deer, and Hedrick paid Ordway the premiums due on the policies on July 7th; that Hedrick received the policies in White Deer about 2 p. m. July 9th, but did not open the envelope containing them until July 11th; on July 10th about 2 o'clock p. m. the wheat standing on section 13 was burned and 60 acres of it was destroyed, resulting in a loss of $4,061.28; that thereafter, on July 11th, Hedrick opened the letter from Ordway, and for the first time learned that the policies had not been issued as agreed, since each of them covered grain in buildings or in stacks, but did not cover same while cut or uncut; that on said date Hedrick communicated with Ordway, informing him that the policies were incorrectly written, which was admitted by Ordway, and upon the latter's direction they were returned to him to be corrected so as to cover standing grain; thereafter Ordway returned the Standard and International policies, amended so as to cover standing grain, but delivered the defendant companies' policies to them; that at all the times herein mentioned Ordway was the duly authorized agent of each of the companies; that the loss by fire to the wheat on section 13 was $4,061.28, the total insurance being $26,400, so that each of the defendant companies owed the plaintiff $769.18; on the 7th of July Hedrick paid Ordway the premium due on each of the four policies, and plaintiff had at no time agreed that the same should be canceled; plaintiff gave notice of loss, and it was agreed between Hedrick and Ordway that the policies should be written so as to cover standing wheat still uncut, but, due to carelessness on the part of Ordway, the policies were written so as to cover grain in buildings or stacks only, and, if they were not so written, then they were fraudulently

⬤⟲For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

written, with the intention and for the purpose of defrauding the recovery by plaintiff in event of fire; at the time the policies were applied for Hedrick and Ordway knew that the wheat on section 13 was standing and uncut, and that the plaintiff desired insurance upon same in that condition; that plaintiff has complied with the stipulations in the policies and is entitled to his debt.

Each of the companies filed a like answer, containing general and special exceptions, general denial, and specially alleging that its policy was for the sum of $5,000 for the term of one month from July 9, 1919, on grain of all kinds, including sacks and bags, owned and held by the assured in trust or on commission or on joint account of others, or held, but not delivered, only while contained in buildings or stacks on farm and situated on section 13, block 7, Carson county, Tex. They further specially set out two paragraphs of the grain record warranty clause and stated that a 100 per cent. coinsurance clause was contained in the policies, and alleged that the loss by fire occurred to standing grain, and did not occur to grain in the condition described in the policy, and that the policy never took effect as to any such property; that, if mistaken in this, it still would not be liable on account of the breach of the record warranty clause contained in the policy. It specially denied the allegations of fraud and mistake, and alleged that, if plaintiff had any conversation with any person which contemplated the issuance of a written policy in the usual form, its policy, if written in the usual form, does not cover any such property nor loss as is set out by the plaintiff, and should not be reformed. Ordway answered by general demurrer and general denial, and denied the allegations of fraud and mistake in the issuance of the policies.

The plaintiff, by supplemental petition, specially alleged that the policies of the defendant were never delivered to him, notwithstanding he paid the premium; that the fire occurred on the 10th day of July, before Hedrick received the policies; that plaintiff had never received them, and does not know their contents; that he has complied with all their conditions and has given the required notice of loss; that he kept a true and correct record of the wheat on section 13 and a set of books, as required by the policy; that, if he is mistaken in this, then he kept a record of the number of acres on section 13, and a record of the wheat sold off of the land before the fire, a record of the number of acres destroyed by the fire, a record of the average number of bushels raised on the other land on this section contiguous to the destroyed area, and also kept a record of the average yield on section 13 and of the market value and price per bushel of the wheat sold off of section 13, and therefore has substantially complied with the requirements of the record clause; that at the time of the fire the wheat was not graded, but was standing and uncut, and in its then condition it was not capable of being graded; that the defendant had denied liability, and, because Hedrick and Ordway knew that the grain was standing and uncut and in shocks, defendant is estopped to deny liability on account of such wheat being uncut.

Plaintiff also filed a trial amendment alleging that on July 7, 1919, and at all times mentioned in plaintiff's petition, Hedrick was the agent of the defendant Connecticut Fire Insurance Company; that said insurance company ratified and adopted the acts of the said defendant Hedrick; that it had held Hedrick out as its agent and clothed him with authority, both express and implied, to solicit fire insurance for it; that it ratified the acts and conduct of said Hedrick in every particular and received the premiums which had been paid Hedrick on the policies.

There was a peremptory instruction in favor of Ordway. No charge whatever was given with reference to Hedrick. In response to special interrogatories the jury found: (1) That Ordway agreed with Hedrick that the former would write the insurance policies for plaintiff to cover both cut and uncut grain in the field; (2) that the total amount of plaintiff's loss by reason of the fire was $4,061.30; (3) that other insurance companies had paid plaintiff on his loss $2,522.93, and that the total loss of plaintiff, exceeding the amount of insurance already received by him, was as to the proportionate amount of the liability of each defendant, $769.18. Judgment was entered accordingly.

[1] Appellants, it seems, have briefed this case under the mistaken impression that plaintiff's action is based upon the written policies. As we construe the plaintiff's pleadings, he seeks to recover upon a parol contract of insurance. It is true that in his testimony he admits that he expected policies in the usual form to be subsequently issued and delivered to him, but, as stated in Chenier v. Insurance Co., Ann. Cas. 1914D, 653, note:

"It is well settled that an oral agreement to insure against fire is presumed to be made in contemplation of a policy containing the terms and conditions in customary use, and impliedly to adopt the same, and it is on this ground that such agreements are sustained as complete and binding contracts."

See, also, Dalton v. Norwich Union F. I. Society (Com. App.) 213 S. W. 231.

[2] It appears from the record that policies were never issued and delivered in accordance with the parol contract, and it is declared in the note to Chenier v. Insurance Co., supra, 654, that—

"By the great weight of authority, if a fire insurance company makes a valid oral agree-

ment to issue and thereafter wrongfully fails or refuses to issue the policy contemplated by the agreement, and denies that any contract of insurance exists, it thereby waives the right to rely on the conditions which by implication from the oral agreement it might rightfully have inserted in such policy."

We could rest the decision of this case upon this rule in so far as the defendants have pleaded the record warranty clause and the breach thereof as a defense if the plaintiff had set up the defendants' denial of the contract and their failure to issue and deliver the policies as a waiver of such warranty.

[3, 4] Many of the 48 propositions urged by the appellants are predicated upon the assumption that Hedrick was not shown to be the agent of either of the companies. This issue was not submitted to the jury, and in support of the judgment we must presume that the court found Hedrick to be such agent, since there is evidence in the record which would sustain the finding as well as a presumed finding that the defendants had ratified the contract which plaintiff made with Hedrick. It was shown that Hedrick was an insurance agent, representing several companies at White Deer; that prior to the date of the contract sued upon he had arranged with Ordway, who was the agent of the defendants at Amarillo, to write insurance upon grain when requested by Hedrick to do so; and that in pursuance to such previous agreement with Ordway the two policies were written. It has been held by this court in Austin Fire Insurance Co. v. Brown, 160 S. W. 973, that a person empowered by an authorized agent to represent him in negotiations for insurance has the same power to bind insurer as has the agent. This being the state of the record, it will not be necessary for us to discuss those assignments raising the question of Hedrick's authority to make the contract, since the appellants are precluded by the judgment.

[5] The first proposition urged is:

"Since the insurance did not cover standing grain, the plaintiff should not recover in the trial court."

The policies written by Ordway and sent to Hedrick did not cover standing grain, but, as above stated, plaintiff did not sue upon the policies. His suit was upon the oral contract, which expressly covered standing grain, together with a small amount which had been cut and was at that time in shocks on the premises. It is settled law that parol contracts of insurance, in the absence of any statutory provision, or provision in the charter of the corporation prohibiting them, are valid. Ginners' Mutual Underwriters Association v. Fisher, 222 S. W. 285; Brotherhood R. R. Trainmen v. Cook, 221 S. W. 1049; 26 C. J. 43–46; 14 R. C. L. 880, § 55. In the authority last cited it is said:

"The authorities are agreed that, in the absence of a statute to the contrary, of which there are examples, an oral contract of insurance which contains all of the elements essential to a contract is valid."

Id. 881, § 56, declares that—

"Notwithstanding some authority to the contrary, it is generally held that an agent with power to make and issue policies may agree orally for temporary insurance."

To the same effect is 26 C. J. 46, § 35, citing numerous authorities from this and other jurisdictions.

[6] It is admitted in the record that Ordway was the agent of the defendants. Under the provisions of V. S. C. S. art. 4961, and in view of the evidence showing that plaintiff, Fields, paid the premium at the time he entered into the oral contract with Hedrick, that Hedrick paid such premium to Ordway, and that no part of it has ever been repaid or tendered to plaintiff, the issue of the authority of Hedrick and Ordway to make the identical parol contract sued upon and its ratification by the defendants is placed beyond controversy. Austin Fire Insurance Co. v. Brown, supra; 26 C. J. 65–70, §§ 65–68. We therefore overrule the first assignment, since by the express terms of the parol contract the insurance was of grain standing uncut in the field.

[7] It is insisted by the third and eighth propositions that, because plaintiff did not pray "for a reformation of the policy sued on," he is not entitled to recover. It is a sufficient answer to these assignments to say that the suit is not based upon the policies, and it has been expressly held in this state that, where the suit is upon an oral contract, plaintiff is not required to seek reformation. Ætna Insurance Co. v. Brannon, 99 Tex. 391, 89 S. W. 1058, 2 L. R. A. (N. S.) 548, 13 Ann. Cas. 1020; National Union Fire Insurance Co. v. Patrick, 198 S. W. 1050.

The fourth proposition is disposed of by the statement that Sampson testified that he heard Hedrick phone Ordway to issue the policies so as to cover wheat that was uncut as well as cut and in shocks, stacks, or buildings. A letter from Ordway to Hedrick of July 7th was admitted, in which Ordway stated that he had issued the policies under the authority given him in the summer of 1917. It seems that this authority had not been revoked at the time the policies were issued.

[8, 9] It is sufficiently alleged in plaintiff's pleadings that Hedrick was the agent of the Northern Assurance Company. It is insisted under several propositions that, since the verdict of the jury does not dispose of the plaintiff's action against Hedrick, it is not sufficient to support the judgment in his favor. The question of Hedrick's liability, like the issue of his agency, was not sub-

mitted to the jury. Plaintiff prayed for judgment against Hedrick only in the event that it should be found that he was not entitled to recover against the companies. The effect of the jury's findings is that he was entitled to recover against the companies. Upon such findings the court was warranted in finding that Hedrick was not liable and in entering judgment accordingly. This is a matter of which Hedrick alone would have the right to complain. May v. Martin, 32 Tex. Civ. App. 132, 73 S. W. 840.

[10] The tenth proposition is:

"Since the policies sued on contained the 100 per cent. coinsurance clause, and the plaintiff alleged there was $26,400 insurance upon the property, and his evidence raised the issue that there was more value at risk that such amount, the trial court erred in refusing the fifth requested charge, which provides, 'What was the total value of all the wheat standing and cut on section 13 at the time of the fire?'"

This proposition cannot be sustained because the 100 per cent. coinsurance clause was not pleaded as a defense. Defendants merely mention the fact that the policies contained such a clause, but the clause itself is not set out in the answers, nor does it appear as an exhibit to the pleadings; furthermore, no breach of the clause was alleged.

[11] Appellants insist that plaintiff is not entitled to recover because he has breached the record warranty clause. The two paragraphs of this clause relied upon are pleaded as follows:

"(1) The assured shall, at the beginning of each season, if the premises are controlled by the assured, take a complete itemized inventory showing the exact quantity and kind of rice and grain or other stock on hand, and, if same has been graded, priced, bought, or sold, will preserve an exact record of such grade or price.

"(2) The assured shall also keep a set of books and a record showing the exact quantity and kind of rice or grain and other stock deposited on the premises, and removed from the premises, and, if any of the rice and grain or other stock is graded, bought, or sold by the assured, he shall produce accurate record of the grades, quantities, and prices involved in such transactions."

If the policies had been issued in pursuance of the terms of the parol contract covering grain not cut or in shocks, so much of said clauses as are applicable to the facts would have required that plaintiff keep an exact record of the grade and price of all wheat sold and removed from the premises. It clearly appears from the record that this has been done. It is difficult to understand how, under a policy covering grain standing in the field, or in shocks in the field, the insured could "at the beginning of the season take a complete, itemized inventory showing the exact quantity and kind of grain on hand." This requirement, in the nature of things, could not possibly be complied with until the crop had been threshed, weighed, and graded. We must therefore construe the clause in this particular to be inapplicable under the contract sued upon, and a failure to comply with it cannot, of course, constitute a defense. Plaintiff's proof showed the number of acres of wheat in section 13, the average yield per acre, the number of acres burned, and the price, grade, and the name of the purchaser of all wheat sold. This is sufficient to satisfy the requirements of the clause in question.

[12] The policies were not made exhibits to defendants' answers, nor did they plead that the policies in contemplation of the parties provided that payment should be made 60 days or any other time after proof of loss; in fact, there is no allegation whatever as to proofs of loss or the existence of any such provision in the policies. Plaintiff is therefore entitled to recover interest from the date of the fire, and the twenty-sixth proposition is overruled.

[13, 14] It was shown that plaintiff had other insurance upon the same property, and under such circumstances defendants would be liable for only their proportional part of the total loss. Evidence was therefore admissible showing the amount of the whole loss sustained. The action of the court in permitting the plaintiffs to show that the other two companies had paid their proportional part of the loss, if error, is harmless, since there is no conflict in the evidence sustaining the plaintiff's right to recover the amount for which judgment was rendered in his favor. But, if it should be held error, it is one in favor of the defendants, and they cannot complain.

[15] As shown by several assignments, objections were made to evidence of conversations between plaintiff and Hedrick and to the substance of conversations and correspondence between Hedrick and Ordway, relating to the contract, the subject-matter thereof, and the loss. All of these objections were overruled, and, we think, properly so, because they are a part of the res gestæ or are admissions by defendant's agents and are competent evidence. Fourteen of the 48 propositions advanced in the brief attack the action of the court in admitting evidence introduced to show the agency of Hedrick. Since under the record his agency is established, and the issue is not reviewable, it is unnecessary to consider these contentions.

We find no reversible error, and the judgment is affirmed.