# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

## FARRIER v. REYNOLDS.

### July 2d, 1891.

1. **SALES OF LAND**—*Rules as to compensation.*—(1) Purchaser is entitled to abatement for deficiency where sale is expressly by acre, or where both parties, in fixing price, had regard to supposed quantity. (2) Where number of acres is given with words, "by estimation," or "more or less," added, small deficiency or excess will not be considered. (3) Where sale is fully understood to be of "a tract of land as it may contain more or less," purchaser takes hazard of gain or loss by excess or deficiency. (4) Hazard contracts have never been discountenanced by the law, though it is not readily presumed that parties intended such. Whether sales are by acre, or in gross, depends on intention, and parol evidence of that is admissible. (5) Where price is the equi-multiple of the supposed number of acres, sale is presumed to be by the acre. If not, not.

2. **IDEM**—*Case at bar.*—Vendor agreed to sell vendee "all of that parcel of land on Sinking creek, in Craig county, known as the C. B. Duncan farm," containing fifty-six acres, more or less, for $1,300. It was fenced in, and its boundaries well known to vendee, who lived near and owned land close by. Vendor testified it was expressly agreed the sale was "by the tract." Vendee denied this; but impliedly confessed the contrary, by his conduct in the premises;

HELD:
> This was not a sale by the acre, and vendee is not entitled to abatement of price for the proven deficiency.

3. **IDEM**—*Receipt—Case at bar.*—Vendee prepared receipt for money paid, and inserted therein "56 acres," instead of "56 acres, more or less," and vendor carelessly signed it. Under the circumstances;

HELD:
> Such receipt cannot affect the construction of the contract.

Appeal from decree of circuit court of Craig county, rendered 17th October, 1890.

The bill in this cause was filed in February, 1890, by the appellant, R. W. Farrier, against the appellee, R. C. Reynolds, and others, to compel specific performance by the said appellee of a contract made by him for the purchase of the land of the appellant, known as the "Duncan Farm," at the price of $1,300.

The appellee answered, admitting the purchase of this land at the price stated, but alleging that the land had fallen off more than one-fourth in quantity upon a survey, and claiming an abatement of the purchase-price on that account, and, as the tract was without buildings, claiming that the average price per acre of the whole tract, under the purchase-price agreed, should be applied to the deficiency, and tendering, as he had done before suit was brought, the balance of the purchase-money still due, upon this basis of thirty-eight and three-quarter acres instead of fifty-six acres, adding two acres to the thirty-eight and three-quarter acres, making forty and three-quarters.

The appellant, upon the other hand, insists that it was a contract of hazard, and a sale in gross of a tract of enclosed land, by its well-known name in the neighborhood, and by its known boundaries, made to a person well acquainted with it, living close by.

The depositions were taken on both sides, and the plaintiff (the appellant here) testified that the purchaser (the appellee) expressly took upon himself the hazard, and agreed to purchase without reference to the number of acres, and signed a written contract stating that the land contained "*fifty-six acres, more or less,*" and, upon making a payment afterwards, had drawn a receipt setting forth the purchase of *fifty-six acres,* which he had signed without reading carefully; that, suspecting no trap, he had merely looked at it, and seeing the amount paid was correctly stated, he had signed it.

The appellee, on the other hand, said, that there was nothing said about the acreage, more than was expressed in the contract.

At the hearing, the circuit court being of opinion that the sale in question was a sale by the acre, and not a sale in gross and at hazard, abated the purchase-price accordingly.

From which decree the plaintiff applied for and obtained an appeal to this court.

The agreement between the parties on this point was as follows: " All that parcel or tract of land situated on the waters of Sinking creek, in the county of Craig, and state of Virginia, known as the C. B. Duncan farm, containing fifty-six acres, more or less."

The evidence shows that the tract of land in question was enclosed by a fence, and well known to the purchaser, who resided in the immediate neighborhood, and owned land close by; that the vendor intended to sell by the tract, and would not have taken the hazard on himself; that pending the negotiations between the appellant, Farrier (when he was about to become the purchaser of this land), and Duncan, the then owner, finding that the deed had not yet been made, that the appellee, Reynolds, sent an emissary to Duncan, and called him out and said: "I am too late, I reckon, but R. C. Reynolds [the appellee] will pay one hundred dollars more for the land in question." Duncan replied scornfully that he did not do business that way. That then this same appellee, Reynolds, procured the father of Mrs. Duncan to go to her and offer one hundred dollars to her to refuse to release her dower interest in this land, and so to defeat the sale to Farrier; but this failed also, and Farrier became the purchaser; whereupon the appellee, Reynolds, exacted of Farrier a promise that if he ever sold this land that he should have the refusal; that Farrier was offered $1,300 for this land by the witness Garman, but mindful of his promise to Reynolds, he felt obliged

to offer the land to him at that price first, when Reynolds first declined to go above $1,200, then $1,250, and finally agreed to give $1,300 only when he heard that Garman was about to buy it.

The receipt in question was drawn, ready for a casual meeting, long after the purchase, when the idea of finding a shortage had been conceived. The proof is clear that this was the object of the receipt, and the appellee admitted, in the presence of witnesses, that he knew the appellant did not know what was in the receipt. When the complaint was first made of this shortage in the acreage the vendor promptly offered to pay back all the money that had been paid, and take back the land, and informed the vendee that there was the same party ready now to give $1,300 for it as a whole, just as he had sold it to him; but the appellee, although able to reimburse himself, and be rid of the bargain if it did not suit him, insisted upon what he conceived to be his legal rights, and kept the land, and claimed the reduction, the abatement in the purchase-money.

*G. W. & L. C. Hansbrough*, for appellant.

*J. W. Marshall*, for appellee.

LACY, J. (after stating the case, as aforesaid), delivered the opinion of the court.

The question we have to decide is, Was this a sale in gross of a tract of land by the boundaries, at a hazard as to quantity, or was it, as the circuit court decided, a contract for a sale by the acre ? It is evident that there was no agreement to buy by the acre, and the purchase-price cannot be evenly divided by the number of acres.

It is proved that there is a deficiency. If it is a sale by the acre, then the purchaser is clearly entitled to an abatement.

In the recent case of *Trinkle* v. *Jackson*, 86 Va. 241, this branch of the subject is considered, and the authorities cited. Then it is, and so, too, when the land is neither bought or sold expressly by the acre, but both parties, in fixing the price for the land, have regard to the quantity which they supposed the estate to consist of, the same rule as to liability for deficiency will prevail. *Yost* v. *Mallecott*, 77 Va. 610, and cases cited.

But when the lands in a conveyance are mentioned to contain so many acres by estimation, or the words "more or less" added, if there be a small portion more than the quantity the vendor cannot recover it; and if there be a small quantity less the purchaser cannot obtain any compensation in respect to the deficiency; and even a large excess or deficiency has not been considered a ground for relieving a vendor or purchaser. And although the contract states the property to contain a given quantity, yet the purchaser must be content with a much less quantity if it be stipulated that the quantity shall be taken as stated, whether more or less.

When the real contract is to sell a tract of land, as it may contain more or less, fully understood to be so, the purchaser takes the tract at the risk of gain or loss by deficiency or excess in the number of acres contemplated, and neither can resort to the other for compensation on the grounds of excess or deficiency. *Jolliffe* v. *Hite*, 1 Call, 284, and in the case of *Hull* v. *Cunningham*, 1 Munford, 335.

It was said there : " The words of the bond do not amount to a warranty of the quantity, inasmuch as, in speaking thereof, there is this caution used : ' Said to contain 370 acres, be it more or less—to-wit, all that tract left him by his father, John Cunningham, deceased.' These circumstances indicate a contract in gross, and not by the specific number of acres."

In *Keytons* v. *Brawford*, 5 Leigh, 48, it was said of such a controversy : " This depends upon the question whether the sale was in gross or by the acre, for if it was a contract of

hazard, in which each party took upon himself the risk of excess or deficiency, there can be no relief afforded to either, whatever may be the actual quantity in the tract sold."

" Questions of this character have frequently been before this court, and nothing is better established than the law of the subject, when the real intention of the parties in the contract is once clearly established. But this intention it is sometimes difficult to discover, from the carelessness of the parties, from the use of equivocal expressions, and from the glosses which are given to the transaction by the testimony of witnesses. Contracts of hazard, such as these we are now considering, never have been discountenanced by our law. When they are clearly established they are valid. It is not readily to be presumed that parties designed to enter into such a contract, unless it is clearly sustained by the facts."

In the case of *Russell* v. *Keeran*, 8 Leigh, 18, it is declared that every sale of land in gross or by the tract is, *ex vi termini*, a sale of hazard as to quantity, the vendor being debarred from claiming any addition to the purchase-money in case the real quantity of land shall be found to exceed the estimated quantity, and the vendee being debarred from claiming any diminution of the purchase-money in case the real quantity shall fall short of the estimated quantity. In that case the deficiency was more than one-fourth of the entire tract, the stated quantity being 405½, be the same *more or less*, the actual quantity 289½ acres.

The question depends upon the intention of the parties, as expressed in the contract by the words " *more or less*," and the evidence of witnesses as to the true intention of the parties, the latter being held admissible because of the ambiguity in these words, (*Russell* v. *Keeran*, *supra*,) and not upon the quantity of deficiency.

In *Caldwell* v. *Craig* there was a deficiency of 200 acres—one-fifth.

In *Tucker* v. *Coke*, 2 Ran. 51, there was a deficiency of 2,000 acres in a large tract.

In the case of *Jones* v. *Tatum*, 90 acres, *more or less*, were sold at the price of $4,750. Judge Moncure said, upon a claim for diminution of purchase-price for a small deficiency: " I think the land was not sold by the acre, but that it was sold by the tract, for $4,750, which is far from being an equi-multiple of the supposed number of acres. The boundaries of the land were well defined, and are minutely set out in the deed of trust. There appears to have been no doubt or difficulty as to any of the corners or lines. The purchaser, no doubt, viewed every part of it. Being a small tract, he could probably stand in the centre of it and see all of it in one view."

These remarks are appropriate to this case. It is clearly in this case not a sale by the acre. The purchase-price and the number of acres clearly show this. The contract excludes the idea by the words " *more or less.*" The vendor testified that it was expressly agreed to be a sale by the tract, quantity not to be considered as forming any part of the sale. The vendee says there was nothing said about this; but he impliedly confesses the contrary by the circumstance that, instead of standing by the contract of sale mutually agreed to at the time of the sale, he prepares a receipt for some of the money, and inserts in that, not " fifty-six, more or less," but fifty-six acres absolutely, and when, by casual meeting, as appears, the same was carelessly signed by the vendor, holding this as a sort of sealed-up mystery, approaching the vendor in the field at his work, and threatening him with a receipt which he had, and which he did not know the contents of, and crowning the whole with the boast: " And I am going to use it against you, too." And when, upon reading the receipt, the vendor said he certainly had not known what it contained, the vendee replied: " I knew you did not," as if he would now make no more defence against the claim.

But obviously the contract between the parties cannot be set aside or construed by any such transaction as this. The question is what the parties intended at the time, as shown by the

contemporaneous circumstances, and I think in this case the purchase was of a tract of land, as such, by boundaries and by name, and the number of acres did not enter into the consideration of the parties at all. Another party stood by ready to give, and is ready to give now, $1,300 for this land, and the vendor promptly, upon complaint made, offered to refund the money and take back the land, which the other refused.

It is evident that he is not damaged in any degree, as he can rid himself of the purchase, and receive back the money, and this without any outlay by him.

The circuit court having decided otherwise, I am of opinion to reverse and annul the decree complained of here.

DECREE REVERSED.