GOULDING *et al.* v. HAMMOND *et al.*

(*Circuit Court, S. D. Georgia, E. D.* January 21, 1892.)

CONTRACTS—CONSTRUCTION—MODIFICATION.

Plaintiffs having the option to require delivery any time during June–September of a cargo of phosphate rock sold by defendants, on August 21st wired defendants to "please extend time for delivery of rock until Nov. 1st," and defendants replied: "Can't you make it Dec. delivery? This preferred to Nov." Plaintiffs acknowledged the reply, saying it had been communicated to the Dublin office, and their reply would be given defendants as soon as received. Defendants at the same time wrote plaintiffs, quoting their telegram, and stating: "Of course it is understood that we will make the delivery in Nov., yet we trust, as stated, you will have it in Dec." *Held*, that defendants were entitled to conclude that plaintiffs asked for a delivery on November 1st, and not an extension of the option; and their acceptance of the change in the terms of the contract, with the letter showing their understanding of plaintiffs' request, to which plaintiffs did not reply, made a completed contract under Code Ga. § 2756, providing that, where the intentions of the parties differ, the meaning placed on the contract by one, and known to be thus misunderstood by the other at the time, shall be held to be the true meaning.

At Law. Action by W. & H. M. Goulding against Hammond Hull & Company for breach of contract. Motion to direct verdict for defendants. Granted.

*Charlton & Mackall*, for plaintiffs.

*Denmark, Adams & Adams* and *Erwin, Du Bignon & Chisholm*, for defendants.

SPEER, District Judge. The plaintiffs have brought their action to recover damages for a breach of the following contract:

"SAVANNAH, GA., 28 May, 1889.

"Sold to Messrs. W. & H. M. Goulding (T. V. Kessler, Agent) of Dublin, Ireland, for account of Messrs. Hammond, Hull & Co., a steamer cargo of kiln-dried river phosphate rock, as follows:

"*Quantity:* About twenty to twenty-five hundred tons, of 2,240 lbs. each, more or less.

"*Price:* Six dollars per ton of 2,240 lbs., delivered along-side buyers' steamer at sellers' wharf, Battery creek, near Port Royal, S. C.

"*Analysis:* Guaranteed fifty-five (55) per cent. of bone phosphate of lime by analysis of Prof. C. U. Shepard, of Charleston, S. C.

"*Delivery:* Any time during June, July, August, and or September, 1889, at buyers' option.

"*Terms of Payment:* Cash against documents on presentation at Baltimore, Md., or London, England, buyers' option.

"*Conditions:* Sworn weigher's weights and sampling at point of shipment. Due notice of charter to be given sellers soon as charter is made. Sellers to have privilege of stevedoring cargo at usual rate for such work.

"*Brokerage:* Payable by sellers on completion of contract at usual rate per ton.　　　　　　　　[Signed]　　J. M. LANG & Co., Brokers.

"Accepted.　　　　　　[Signed]　　HAMMOND, HULL & Co.

"Per H. P. RICHMOND, Atty."

To which the following was added on May 31st, at the instance of Hammond, Hull & Co.:

"*Steamer always afloat.*"

The phosphate provided for, to which the contract refers, was not delivered in accordance with the clause of the contract upon which the controversy has been occasioned, to-wit:

"*Delivery:* Any time during June, July, August, and or September, 1889, at buyers' option."

The plaintiffs and defendants are, respectively, firms of high business reputation, and it appears from all the evidence that the action has resulted from an honest difference with the reference to the obligations of the parties. The material evidence is all in the telegraphic and written correspondence, and the motion necessarily submits to the court for its instruction the contract thus evidenced.

There is no ambiguity whatever as to the meaning of the original contract; the plaintiffs have the option of directing the delivery of the bone phosphate at any time during the months specified. It is in evidence that the plaintiffs had great difficulty in chartering a steamer. The 21st of August had arrived. On that day they sent, and the defendants received, the following telegram:

"BALTIMORE. *Hammond, Hull & Co.:* Please extend time for delivery of rock until November first. Telegraph reply.

"[Sgd.]　　　　　　　　　　　W. & H. M. GOULDING."

The defendants replied immediately:

"*W. & H. M. Goulding, Baltimore, Md.:* Can't you make it December delivery? This preferred to November.

"[Sgd.]　　　　　　　　　　HAMMOND, HULL & Co."

The plaintiffs' agent received the reply, and acknowledged it with thanks, stating "it had been cabled to our Dublin office," "and as soon as I receive their reply, will advise you." On the same date Hammond, Hull & Co. wrote the plaintiffs, quoting their telegram, asking that it be made December delivery, and stating further:

"We prefer December to November, and trust it may be your pleasure to make it December, thereby making the transaction agreeable to all interested. Of course, it is understood that we will make the delivery in November, yet we trust, as stated, you will have it in December."

This concluded the correspondence of the 21st of August, the day when the change in the contract was first suggested by the plaintiffs. From this it appears that whatever may have been the purpose of the plaintiffs in the use of the language "extend the time for delivery until November the first," Hammond, Hull & Co. construed it to be a request to extend the actual delivery until November 1st, and at once assented, as appeared by their letter of that date we have just read. The letter was written on the 21st, and the acceptance took effect immediately when it was sent. Code Ga. § 2728. If the proposition is made by letter, the acceptance by written reply takes effect from the time it is sent, and not from the time it is received; hence the proposer cannot withdraw in the mean time. If the letter contains alternative propositions, the party receiving may elect. See Add. Cont. par. 22; Langd. Cas. Cont. par. 4 *et seq.; Deshon* v. *Fosdick,* 1 Woods, 286. Contract is held to be complete on delivery of letter in post-office. *Bryant* v. *Booze,* 55 Ga. 448. But the telegram of the defendants of the 21st also conveyed to the plaintiffs that it was understood that a November delivery was asked for "Can't you make it December delivery?" they telegraphed. "This is preferred to November." The import of this manifestly is that a December delivery is preferred to a November delivery. It also appears from a certificate from the Beaufort Phosphate Company that on the 21st of August the defendants requested the company to extend the time of delivery of 2,000 or 2,500 tons of phosphate rock from September to November delivery, possibly to December delivery. This certificate was inclosed to the plaintiffs, and is evidence, along with the other correspondence. It is therefore clear that the defendants understood that the delivery asked for by the plaintiffs was on November 1st, and necessarily, from the nature of the cargo, for such other time as was necessary to load. The plaintiffs insist, however, that this was not a proper construction of their request. They merely asked, they insist, for an extension of the buyers' option until November 1st; and it may be, and indeed it is fair to conclude, that this is all the plaintiffs' agent intended. But the construction which the defendants placed upon the contract could not have been misunderstood by the plaintiffs. That the defendants did not regard the plaintiffs' telegram of the 21st as a demand for an extension of the option is now clear, and it seems equally clear that the plaintiffs perceived that the defendants, while agreeing to a November, preferred a December, delivery, and did not propose to extend the option of November, with a preference for an additional extension of the same to December. If it were otherwise, why should the plaintiffs delay acceptance, and cable the Dublin house for its assent? Why was this necessary for a mere extension of the buyers' option? It gave them greater latitude, with no possibility of injury. The letter containing this statement by the plaintiffs was written on 21st

August. Then the misunderstanding of the defendants was known to the plaintiffs, and it was the duty of the plaintiffs at once to telegraph the defendants and call their attention to their misconstruction of the plaintiffs' request. The law upon this subject is well expressed by section 2756 of the Code of Georgia:

"The intention of the parties may differ among themselves. In such case the meaning placed on the contract by one party, and known to be thus understood by the other party at the time, shall be held as the true meaning."

This we understand to be the general law of contracts. See, also, *Garrison* v. *U. S.*, 7 Wall. 688–692. This view of the question is, in our opinion, strengthened by the following considerations: When Goulding & Co. sent the first telegram of the 21st of August, they proposed a change in the contract,—a contract which was itself without ambiguity, and distinctly understood. The telegram was not an inquiry, as stated in one of their letters, but it was an earnest solicitation for a change of the contract. Then they were under a peculiar obligation to correct instantly, by the most expeditious method, any misapprehension of their proposal which the defendants had given. With such conditions, a failure to comply with the original contract, superinduced by the plaintiffs' original telegram by a misunderstanding of the same which it was the duty of the plaintiffs to correct, cannot, in our opinion, be a cause of action. The question is, however, by no means free from difficulty, and its determination in this manner upon a motion to direct a verdict, counsel on both sides agreeing that the decision must finally depend upon the construction of the written evidence, will enable the plaintiffs readily and speedily to have their rights again considered, which I trust may be done. At present, however, we feel obliged to direct a verdict for the defendants.