# Richmond.

McComb v. Gilkeson and Others.

November 18, 1909.

Absent, Buchanan, J.

1. VENDOR AND PURCHASER—*Sale by the Acre—Presumption.*—Courts of equity do not favor contracts of hazard, and every sale of real estate where the quantity is referred to in the contract, and the language of the contract does not plainly indicate that the sale was intended to be a sale in gross, is presumed to be a sale by the acre. The presumption against contracts of hazard can be effectually repelled only by clear and cogent proof, and the burden is always upon the party asserting a contract of hazard to clearly establish the assertion.

2. VENDOR AND PURCHASER—*Contracts of Hazard—Sale by the Acre—Presumption—Case in Judgment.*—Where parties contract for the payment of a gross sum for a tract of land upon the estimate of a given quantity, the presumption is that the quantity influenced the price, and that the agreement was not one of hazard. Whether it be a contract for a sale in gross or by the acre depends on the intention of the parties to be gathered from the language of the contract and the surrounding facts and circumstances, but the court will always construe it to be a contract for a sale by the acre, unless the contrary clearly appears. The evidence in this case shows a sale by the acre, and that both parties were in good faith mistaken as to the quantity actually in the tract.

3. VENDOR AND PURCHASER—*Sale of Land—Deficiency—More or Less—Case in Judgment.*—The language "more or less" used in contracts for the sale of land must be understood to apply only to small excesses or deficiencies attributable to variations of instruments of surveyors, etc. The use of these terms repels the idea of a contract of hazard and implies that there is no considerable difference in quantity. A deficiency of ten acres in a tract of land represented as containing two hundred and forty-five and one-fourth acres is not the small deficiency attributable to a variation of instruments.

4. Vendor and Purchaser—*Deficiency in Quantity of Land—Laches in Asserting Claim.*—There was no laches on the part of the purchaser, in the case in judgment, in asserting his claim for an abatement of the purchase price for land sold by the acre. He did so promptly on discovering the shortage. The suit in which the land was sold was still pending, all the parties were before the court, and a large part of the purchase money was still unpaid.

5. Vendor and Purchaser—*Sale of Land—Deficiency—Mistake—Rights of Infants.*—The principle upon which courts of equity grant relief in cases of deficiency in the estimated quantity upon the sale of lands is that of mistake, and is as applicable where the rights of infants are involved as in other cases. An infant is as much bound as an adult by the decree of a court of equity which has jurisdiction of the subject matter and parties to the litigation.

6. Vendor and Purchaser—*Deficiency in Quality of Land—Measure of Damages.*—The general rule of compensation or abatement for a deficiency in the quantity of a tract of land sold by the acre is according to the average value per acre of the whole tract, unless particular circumstances require a departure from that rule.

Appeal from a decree of the Circuit Court of Augusta county in a suit in equity wherein appellant filed a petition asking an abatement of part of the purchase price of a tract of land. From a decree dismissing the petition, petitioner appeals.

*Reversed.*

The opinion states the case.

*Robertson & Robertson,* for the appellant.

*Bumgardner & Bumgardner,* for the appellees.

Harrison, J., delivered the opinion of the court.

This controversy involves the right of appellant to have the purchase price of a farm bought by him from the appellees abated because of a deficiency in the quantity; the claim being that the

sale was by the acre and that the number of acres influenced the price.

It appears that David V. Gilkeson died intestate in March, 1871, seised of certain lands in Augusta county, which he held jointly with his brother, Andrew T. Gilkeson. About the year 1875 these lands were, by proceedings had in the Circuit Court of Augusta county, divided between Andrew T. Gilkeson and the widow and heirs of David V. Gilkeson. In that partition there was assigned to the widow and heirs of David V. Gilkeson the homestead tract, containing 245¼ acres, as shown by a plat and survey made by John G. Stover and filed in the partition proceedings. This Stover plat and survey is referred to in the present case as showing the number of acres the appellees owned, though the farm is generally spoken of in the record, in round numbers, as a "245-acre farm." This is the farm that belonged to and was sold to the appellant by the appellees, Mary E. Gilkeson, the widow of David V. Gilkeson, and her children, Emma L. Gilkeson and Mary J. Gilkeson, and her three infant grandchildren, David, Frederick and Edgar Guthrie, who represent the interest of their mother, who was Sallie L. Gilkeson, one of the three children of David V. and Mary E. Gilkeson.

For some time prior to 1905 this farm was in the hands of P. E. Wilson & Co., real estate agents, for sale. On April 27, 1905, the appellant submitted to these agents an offer for the farm. So far as necessary to be quoted, that offer was in these words: "I will give you eighty-two hundred and fifty dollars for the Mrs. M. E. Gilkeson farm of 245 acres, more or less, near Barterbrook, Augusta county, Va. Payable as follows: One-third cash, and the residue in one and two years, carrying 6 *per cent.* interest secured by vendor's lien."

This proposition was submitted to and accepted by the adult owners, and a friendly suit was brought to have the sale ratified on behalf of the three infant owners, in which the adult owners were the plaintiffs and the three infants were the defendants. In this case the sale was approved and ratified as to the infants,

and W. N. Fishburne, the counsel for the owners, was appointed
a special commissioner to unite, on behalf of the infants, with
the adult owners in a deed conveying the land to the appellant.
This deed, which was duly executed, conveys to the appellant
"that certain tract of land, containing 245 acres, more or less,
lying in Augusta county," and refers to the old Stover plat and
survey which describes the land conveyed as containing 245¼
acres.

After getting possession of the farm the appellant had it sur-
veyed and found that it contained only 233¼ acres. Thereupon
he filed his petition in this suit, asking to be allowed a proper
abatement on his purchase-money bonds.

After this petition was filed it was agreed by all parties that
C. E. McCutchan, the county surveyor, should survey the land,
and that the quantity ascertained by him should be taken as the
true quantity for the purposes of this suit. This surveyor re-
ported that the farm contained 235 acres and 39 poles, or 10
acres and 1 pole less than 245¼ acres, which the appellant
claims the farm was represented to contain.

Upon the final hearing the circuit court dismissed appellant's
petition, holding that he was not entitled to any relief on ac-
count of the shortage in acres ascertained by the agreed survey
of C. E. McCutchan.

This court has so often discussed this subject and laid down
the principles governing this class of cases that the restatement
of those principles must necessarily be repetition.

It is well settled that courts of equity do not favor contracts
of hazard, and that every sale of real estate, where the quantity
is referred to in the contract, and the language of the contract
does not plainly indicate that the sale was intended to be a sale
in gross, must be presumed to be a sale by the acre. The pre-
sumption against contracts of hazard can be effectually repelled
only by clear and cogent proof, and the burden is always upon
the party asserting a contract of hazard to adduce facts which
clearly establish that assertion. Where the parties contract for

the payment of a gross sum for a tract of land upon the estimate of a given quantity, the presumption is that the quantity influenced the price to be paid, and that the agreement was not one of hazard. Whether it be a contract in gross or for a specific quantity depends, of course, upon the intention of the contracting parties, to be gathered from the terms of the contract and all the facts and circumstances connected with it, but in the interpretation of such contracts the courts, not favoring contracts of hazard, will always construe the same to be contracts of sale per acre, wherever it does not clearly appear that the land was sold by the tract and not by the acre. *Berry* v. *Fishburne,* 104 Va. 459, 51 S. E. 827; *Watson* v. *Hoy,* 28 Gratt. 698.

There is no merit in the contention made by appellees that Wilson & Co., the real estate agents who effected the sale, were the agents of the appellant. The evidence establishes the contrary beyond any reasonable controversy.

That the appellant was influenced to make the purchase by the representation that the farm contained two hundred and forty-five acres and a quarter is abundantly and conclusively shown, apart from his own evidence to that effect. The evidence shows that the appellant made diligent inquiry as to the number of acres in the farm, and the real estate agents say that he laid great stress upon the acreage and would not have bought except for the representation that the farm contained 245¼ acres. Mr. Wilson, one of the firm of Wilson & Co., says that he derived his information as to the contents of the farm from the owners and from the land books, which showed the farm to be assessed as containing 245¼ acres. The old survey ascertained the acreage to be 245¼ acres, and the court sold and conveyed to the appellant by that survey.

That the vendors believed that they owned and were selling 245¼ acres of land does not admit of doubt. The record satisfactorily shows that it was the intent and belief of the court, of the adult heirs, and of the purchaser, that 245¼ acres of land were being sold for $8,250. As in the very similar case of *Wat-*

*son* v. *Hoy, supra,* the record in the present case shows that all of the parties, from the commencement of the negotiations down to and including the deed executed by the adult parties and the commissioner of the court, estimated this farm as containing 245¼ acres, and that it was bought and sold as and for that quantity.

The appellees insist that the deficiency is so slight as to be covered by the application of the words "more or less."

In *Berry* v. *Fishburne, supra,* it is said: "The language *more or less,* used in contracts for the sale of land, must be understood to apply only to small excesses or deficiencies, attributable to variations of instruments of surveyors, etc. When these terms are used it repels the idea of a contract of hazard, and implies that there is no considerable difference in quantity."

A deficiency of about ten acres in a tract of land represented to contain 245¼ acres is not the small deficiency which the rule mentioned attributes to a variation of instruments. It is a substantial loss, and shows that a mistake has been made in estimating the quantity. There was no laches on the part of appellant in asserting his claim for abatement of the purchase money. He did so promptly after discovering the shortage. The suit was still pending and all the parties were before the court and a large part of the purchase money unpaid. *Watson* v. *Hoy, supra.*

It is suggested that part of this land belongs to infants, and that the abatement will be prejudicial to them.

The record shows that it was to the interest of the infants to unite with the adult owners in selling the farm containing 245¼ acres at $8,250, and it is difficult to see why it would be disadvantageous to them to sell the farm at the same relative price when it is shown to contain only 235 acres and 39 poles. The principle upon which a court of equity gives relief in cases of deficiency in the estimated quantity upon the sale of lands is that of mistake, and no reason is perceived why, in such a case, a court of equity should allow infants to profit by a mistake the court has made in their favor to the prejudice of an innocent

party any more than it would permit adults to take advantage of their mistake to the prejudice of the innocent victim of that mistake. When the court acquires jurisdiction of the subject and person, an infant is as much bound by its decree as an adult. *Zirkle* v. *McCue,* 26 Gratt., 517.

As to the measure of damages in a case like this the general rule of compensation or abatement is according to the average value per acre of the whole tract, unless particular circumstances require a departure from that rule. *Watson* v. *Hoy, supra.*

Whether or not there are any particular circumstances which take this case from under the operation of the general rule can be inquired into when the case goes back to the circuit court.

Upon the whole case we are of opinion that the appellant was entitled to a proper abatement of the balance of purchase money owing by him for the deficiency shown in the quantity of land bought by him, and, consequently, that the circuit court erred in dismissing his petition.

The decree complained of must be reversed, and the cause remanded for further proceedings in accordance with the views expressed in this opinion.