### DICKEY v. HURD et al. *

### HURD et al. v. DICKEY.

Circuit Court of Appeals. First Circuit. June 11, 1929.

Nos. 2348, 2349.

Hamilton Phinizy, of Augusta, Ga., and Herbert A. Baker, of Boston, Mass., for plaintiff.

E. H. Callaway (of Callaway & Howard), of Augusta, Ga. (Edith L. Hurd, of Somerville, Mass., on the brief), for defendants.

Before BINGHAM and ANDERSON, Circuit Judges, and MORRIS, District Judge.

BINGHAM, Circuit Judge. These are cross-appeals from a decree of the District Court for Massachusetts in favor of the plaintiff, John W. Dickey, of Augusta, Ga., in a suit in equity brought by him against Ly-

man C. Hurd, of Winter Hill, Mass., since deceased (the executrices of whose will, Lizzie E. Hurd and Edith L. Hurd, have been substituted as defendants), to enforce specific performance of an alleged contract said to have been entered into between Mr. Hurd, in his lifetime, and Mr. Dickey for the sale and purchase of certain lands on the Savannah river in Richmond county, Ga.

By the decree it was ordered and adjudged:

"1. That Lyman C. Hurd and the plaintiff, John W. Dickey, entered into a contract as alleged in the bill of complaint whereby the plaintiff became entitled to a conveyance of all that tract of land described in paragraph 2 of the plaintiff's bill of complaint upon payment by the plaintiff to the said Lyman C. Hurd at the rate of $15 per acre.

"2. That the said tract of land contained 1,300.14 acres; that the price as agreed upon in said contract is $19,502.10.

"3. That the defendants, Edith L. Hurd and Lizzie E. Hurd, as executrices of the will of Lyman C. Hurd, shall execute and deliver to the plaintiff, John W. Dickey, a good and sufficient quitclaim deed for conveyance of premises described in paragraph 2 of plaintiff's bill of complaint, free from all encumbrances, and upon the delivery to him of such deed the plaintiff shall then and there pay to the defendant the sum of the purchase price stated in the agreement between them, to wit, $19,502.10. * * *"

It appears that on June 30, 1926, the plaintiff from Augusta, Ga., wrote a letter to Mr. Hurd, saying: "Under date of the 15th inst., I wrote you and asked you if you cared to put a price on your land on the Savannah River but am without a reply to this letter. If you care to put a price on it I would like to work on the proposition"; that on July 8, 1926, Mr. Hurd, from Winter Hill, Mass., by letter replied: "Dear Mr. Dickey: Replying to your favor of the 30th ult., I wish to say that I should like very much to look over the property before making a price on it. As I cannot come just at present, I think it only fair to name a price to you. My deeds call for 1,266 acres and I will sell the same to you for $15 per acre cash and give you till July 18, 1926, including that day to accept this offer. This offer I wish you to consider strictly confidential."

July 17, 1926, the plaintiff, from Augusta, Ga., telegraphed Mr. Hurd at Winter Hill, Mass., as follows: "Answering your letter of July eighth in which you offer to sell me your twelve hundred sixty six acres in Richmond County on Savannah River at fifteen dollars per acre and give me thru the eighteenth to accept your offer, I desire to say I will buy the property at your price and terms and will send you Monday five hundred dollars to be held by you subject to examination of titles by my attorneys and survey of property to show acreage you claim. Unable to mail confirmation tonight as just returned from trip to your property but will send letter Monday."

This telegram was received by Mr. Hurd on the day of its date. On July 22, 1926, Mr. Hurd notified Mr. Dickey that the offer had expired, as he (Dickey) had "not complied with requirements." The letter of July 8th and the telegram of July 17th are the instruments which the plaintiff contends, and the court below found, constitute the contract, the specific performance of which it decreed.

If further appeared that July 17 was Saturday, and that Mr. Dickey did not on the following Monday mail to Mr. Hurd the letter of confirmation and the $500 he stated he would in his telegram of July 17, but that on Tuesday, July 20, he did so, in which he said: "Dear Mr. Hurd: I was unable to send you the contract yesterday, as I could not get it prepared. I had to get the boundaries of your property, which I only got last night. I am enclosing herewith contract in duplicate, and New York draft for $500.00 payable to your order. Please be kind enough to execute this contract, you retaining one and return one to me. I will also thank you to send me whatever chain of title you have to this property and I will get the matter in shape as promptly as possible."

The contract in duplicate, signed by Dickey, and which he inclosed in the letter, read as follows:

"This Memorandum of Agreement made this 20th day of July, 1926, between Lyman C. Hurd, of Winterhill, Massachusetts, party of the first part, and John W. Dickey, of Augusta, Georgia, party of the second part;

"Witnesseth that the party of the first part has agreed to sell to the party of the second part, and the party of the second part has agreed to buy from the party of the first part, for the consideration and under the terms hereinafter set out:

"All that tract or parcel of land, situate, lying and being in the State of Georgia, County of Richmond, lying along the waters of the Savannah River, containing twelve hundred and sixty-six (1266) acres, be the same more or less, known as the Hurd Place, and bounded North by the Savannah River; East by lands formerly owned by Lake Brothers, lands formerly of Bell now of C.

W. Thompson; West by lands of Branch, Scott, Williams and C. W. Thompson; and South by lands formerly of Bell, now belonging to C. W. Thompson.

"The purchase price to be paid for said tract of land is eighteen thousand, nine hundred and ninety dollars ($18,990.00), of which sum five hundred dollars ($500.00) is paid simultaneously with the execution and delivery of this memorandum of sale, the receipt whereof is hereby acknowledged by the party of the first part, the balance to be paid as hereinafter set out.

"The party of the second part shall have a reasonable time in which to have the party of the first's title to the above described premises examined by counsel for the party of the second part.

"If the titles to the premises are approved of as good and merchantable by the counsel for the party of the second part, the party of the second part will pay to the party of the first part the balance of the purchase money, to wit: Eighteen thousand, four hundred and ninety dollars ($18,490.00) and simultaneously therewith the party of the first part will execute and deliver to the party of the second part, or whomsoever he may designate, a good and sufficient deed of conveyance to the tract hereinbefore described, with full warranty of title.

"In the event that counsel for the party of the second part do not approve of the sufficiency of the title as to its legality and merchantability, then the party of the second part shall have the right to rescind this contract, and the payment made on account of the purchase price shall be returned by the party of the first part to the party of the second part.

"All taxes up to and including the year 1925 which would be a lien upon the premises, shall be paid by the party of the first part. The taxes for the year 1926 shall be pro rated between the parties thereto as of the date of this memorandum.

"The party of the second part will pay all costs in connection with examination of title and drawing of deed of conveyance. If there are any defects found in the title, which can be cured within a reasonable time, the party of the first part will at his expense undertake with all reasonable dispatch to cure such defect or defects.

"In witness whereof, the parties hereto have hereunto set their hands in duplicate, the day and year above set out."

The defendants have assigned numerous errors, but the questions raised by them are:
(1) Was the contract sought to be established by the letter of July 8 and the telegram of July 17 unilateral, that is, one where the offer simply required the offeree to do something, not to promise to do something; or, as applied to the facts in this case, was the offer one that only required the offeree to pay the purchase price on or before the 18th of July, 1926, to create a contract?

(2) Was the contract sought to be established a bilateral one, involving mutual promises, that is, an offer and a notification of acceptance; and, if so, was the acceptance unequivocal, unconditional, and without variance?

(3) If a bilateral contract was consummated, was Mr. Hurd's telegram of July 22 notifying Mr. Dickey that the offer had expired a repudiation of the contract and a waiver of Mr. Hurd's right to have Mr. Dickey tender the purchase price before bringing his bill for specific performance?

(4) Did the court err in its decree by requiring the execution of a deed by the executrices before a tender or payment of the purchase money, the purchase price not having been tendered before suit was brought, or thereafter at any time paid into court?

The plaintiff, in his assignment of errors, complains that the court erred in denying his motion to add new parties and in holding that Edith L. Hurd and Lizzie E. Hurd, sole legatees and devisees under the will of Mr. Hurd, were not necessary parties.

If the contract attempted to be consummated was unilateral, one where the offer simply called for the payment of money, it would be a Massachusetts contract, for the offeree, Mr. Dickey, in order to accept the offer, would be required to make payment of the price at Mr. Hurd's home in Massachusetts. And the same is true if the contract sought to be consummated was bilateral and involved mutual promises. The parties were at a distance from one another. The offer was sent by mail. The reply of acceptance was sent by telegraph. Where parties are at a distance from one another, and an offer is sent by mail, it is universally held in this country that the reply accepting the offer may be sent through the same medium, and, if it is so sent, the contract will be complete when the acceptance is mailed, properly addressed to the party making the offer and beyond the acceptor's control; the theory being that, when one makes an offer through the mail, he authorizes the acceptance to be made through the same medium, and constitutes that medium his agent to receive his acceptance; that the acceptance, when mailed, is then constructively communicated to the of-

feror. Busher v. New York Life Insurance Co., 72 N. H. 551, 552, 58 A. 41; Commonwealth, etc., Ins. Co. v. Knabe & Co. Mfg. Co., 171 Mass. 265, 270, 50 N. E. 516; Brauer v. Shaw, 168 Mass. 198, 200, 201, 46 N. E. 617, 60 Am. St. Rep. 387, and cases there cited; Patrick v. Bowman, 149 U. S. 411, 416, 13 S. Ct. 866, 37 L. Ed. 790. But in this case, although the offer was by mail, the acceptance, was by telegraph, and, not being sent through the same medium, it cannot be said that Mr. Hurd authorized an acceptance by telegraph and constituted that medium his agent to receive the acceptance. In this situation the acceptance, when delivered at the telegraph office, was neither actually nor constructively communicated to Mr. Hurd, and the contract was not consummated, if it was ever consummated, until the telegram was delivered to Mr. Hurd in Massachusetts. Therefore, if a contract was consummated, whether unilateral or bilateral, it was made in Massachusetts; and its validity, construction, and effect are to be determined by the law of that state. Perry v. Insurance Co., 67 N. H. 291, 295, 33 A. 731, 68 Am. St. Rep. 668. But, so far as the questions involved in this case are concerned, there is little or no difference in the principles of law we shall be called upon to consider, whether the law of Georgia or Massachusetts is applied.

As to the first question, we think that the language used by Mr. Hurd in his letter of July 8 makes it reasonably certain that he offered to sell his land on the Savannah river to the plaintiff for $18,990; that, when he said in that letter: "My deeds [of that land] call for 1,266 acres and I will sell the *same* to you for $15 per acre," he offered to sell the entire tract covered by his deed, estimated to contain 1,266 acres, and that that estimate, not measurement, was the basis of reckoning which fixed the purchase price. This meaning of the offer was not only the one entertained by Mr. Hurd but also by Mr. Dickey, to whom the offer was made; for in his telegram of July 17 he recites that Mr. Hurd's offer is "to sell me your 1,266 acres in Richmond County on Savannah River at $15 per acre, etc."; and in the memorandum of agreement inclosed in his letter of July 20, in confirmation of his telegram, he specifically states: "The purchase price to be paid for said tract of land is eighteen thousand nine hundred and ninety dollars ($18,990.00)."

A more difficult question is whether the offer calls for payment of the purchase price, an act of acceptance, on or before July 18; or whether it simply calls for a notice of acceptance. The language of the offer is: "I will sell the same to you for [having named the price] cash and give you till July 18, 1926, including that day to accept this offer." Standing alone and apart from the surrounding circumstances, the words "to accept this offer" are equivocal. They may mean that he would give through July 18 to accept the offer by paying the price fixed; or would give him through that date to accept the offer by giving him notice to that effect. But two letters were put in evidence, written by Mr. Dickey to Mr. Hurd between the 8th and the 17th of July. The first is dated July 12th and the second July 15th. In both of these letters Mr. Dickey clearly discloses that he understood the offer did not require him to pay the purchase price on or before July 18, but to give an answer, notice of acceptance, on or before that day. In the letter of the 12th he says: "Answering your favor of the 8th inst., I thank you for giving me through the the 18th of July to give you an *answer* about your property. * * * I expect to give you a *definite answer* about your property before that time," and later on in the same letter he states: "I will give you an *answer* within the time you were kind enough to allow me." And in the letter of July 15th, after explaining difficulties he was having, he stated: "If possible I am going to give you an *answer* within the time you have allowed me." When Mr. Hurd received these communications, he was fully apprised of how Mr. Dickey understood the language of his offer, and, if that was not the meaning which he intended to give to it, it was his duty to have at once informed him that the offer called for payment of the price on or before the 18th of July, and not simply for a notice of acceptance. It was not open to him to lie quietly by until after the time of acceptance had expired and then say my offer called for payment of the price on or before July 18, and you have not met the requirements. Goulding v. Hammond (C. C.) 49 F. 443; Leete v. Pacific Mill & Mining Co. (C. C.) 88 F. 957, 969; Pacific Mill & Mining Co. v. Leete (C. C. A.) 94 F. 968, 975. We are therefore of the opinion that the contract which the parties undertook to make was a bilateral one. This reduces the second question to the proposition whether the language of the telegram of July 17 shows the acceptance was unequivocal, unconditional, and without variance.

In this telegram of acceptance the plaintiff stated: "I will buy the property [described in your deed] at your price [$18,-990.00] and terms." If he had stopped there, his acceptance would undoubtedly have been unequivocal and unconditional, but he did

not. He went further, and said: "And will send you Monday $500 [part of the purchase price] to be held by you subject to examination of titles by my attorneys and survey of property to show acreage you claim." Based on this language, the contention of the defendants is that the acceptance was not unequivocal and unconditional. The plaintiff's contention is to the contrary. He says (1) that the additional language used refers only to the defendants' retention of the $500, and not to the performance of the contract by the plaintiff; and (2) that the additional language states no more than what the law implies in every contract for the purchase and sale of real estate.

It is apparent from the telegram of July 17 that the $500, which the plaintiff there stated he would send in his letter confirming the telegram, was to be taken and held as a part of the purchase price. This is also clearly shown in the memorandum of agreement inclosed 'in the confirmation letter of July 20, where it says: "The purchase price to be paid for said tract of land is eighteen thousand nine hundred and ninety dollars ($18, 990.00), of which sum five hundred dollars ($500.00) is paid simultaneously with the execution and delivery of this memorandum of sale," etc. Therefore, the additional clause, "subject to examination of titles by my attorneys and survey of property to show acreage you claim," if it should be limited in its qualifying aspect, as plaintiff contends, renders the purchase price, to the extent of $500 at least, subject to the qualifying clause. But we think it goes further and qualifies, not only the part payment of $500, but the payment of any portion of the purchase price. The meaning which the plaintiff intended to convey by this language is fully disclosed in the memorandum of agreement contained in his letter of July 20, confirming the telegram. In that he says:

"If the titles to the premises are approved of as good; and merchantable by the counsel for the party of the second part, the party of the second part will pay to the party of the first part the balance of the purchase money, to wit: eighteen thousand four hundred and ninety dollars ($18,490.00), etc. * * *"

"In the event that counsel for the party of the second part do not approve of the sufficiency of the title as to its legality and merchantability then the party of the second part shall have the right to rescind this contract, and the payment made on account of the purchase price shall be returned by the party of the first part to the party of the second part."

This was not an unequivocal and unconditional acceptance of the offer. It was the introduction of a new term. If Mr. Hurd, by the terms of his offer, impliedly agreed to give a good merchantable title, one that a court of competent jurisdiction would determine to be merchantable, he did not impliedly agree to furnish a title "the legality and merchantability" of which should meet the approval of Mr. Dickey's counsel, and that, if it did not meet their approval, then in that contingency Mr. Dickey should not be regarded as bound by his acceptance.

Nor did that part of the clause, "subject to * * * survey of property to show acreage you claim," leave the acceptance unconditional. The offer was not for a sale of the land by measurement, but of the entire tract covered by Mr. Hurd's deed, estimated as containing 1,266 acres. The offer, being of the entire tract, at an estimated acreage, did not embody an implied agreement or warranty that the tract contained 1,266 acres. And in such case the law will not imply that the offer contemplated a survey to ascertain the acreage or that time should be given after July 18 in which to make a survey for such purpose. The evidence showed that the plaintiff had been upon and examined the land; that he did so to ascertain its boundaries and the amount of timber upon it, as what he was interested in buying was timber, not acreage. The plaintiff himself so testified. As the offer was of the entire tract at an estimated acreage, and the additional clause in the acceptance required a survey and an extension of time for making the survey, the acceptance imposed a condition at variance with the terms of the offer, and was not unconditional.

Mr. Hurd's rejection of the plaintiff's alleged acceptance was: "You are hereby notified my offer has expired. You have not complied with requirements." This was broad enough to cover every failure here relied upon.

Entertaining these views, it is unnecessary to consider the remaining questions raised by the assignments of error of either party.

The decree of the District Court is vacated, and the case is remanded to that court, with directions to dismiss the suit, with costs in this court to the appellants in No. 2349, and to the appellees in No. 2348.

ANDERSON, Circuit Judge (dissenting). I concur in the majority opinion holding that the main defense—that Hurd's offer called for a cash payment by July 18—is un-

tenable. This should result in affirming the decision below. It is of significance that Hurd's repudiation was based solely on Dickey's failure to make cash payment within this time limit. This alone would ground a decision for the plaintiff by estoppel. Compare Robb v. Crawford, 56 App. D. C. 394, 16 F. (2d) 339, 441 and cases. But the decision of this court reversing is, in my opinion, grounded on disregard of two pretty important principles of law. I agree fully with the two learned District Judges, who, on careful consideration, held the language of Dickey's telegram following his flat acceptance, "I will buy the property at your price and terms," to involve nothing but an unnecessary statement of the legal implications—that the seller must give him merchantable title, and the acreage shown by deeds should be verified by survey.

An offer to sell land by the acre is generally—always unless the language of the offer plainly excludes that construction—subject to verification. Hurd's offer falls under the general rule. He simply said, "My deeds call for 1,266 acres." This fairly implied that he also expected verification by survey. Dickey in good faith caused a survey and found 1,300.14 acres; the decree below requires him to pay for that acreage at $15 per acre. The authorities conclude this point in favor of the plaintiff. Compare 39 Cyc. 1315, note 20, and cases cited; 29 Am. & Eng. Ency. (2d Ed.) p. 620, note 6; McComb v. Gilkeson, 110 Va. 406, 66 S. E. 77, 135 Am. St. Rep. 944.

The fact that Dickey's attorneys failed accurately to embody the contract, made by Hurd's letter and Dickey's telegram, in the unnecessary formal contract, is entirely immaterial. The binding contract was made by the letter and telegram. Neither party could withdraw from, or add any new condition to, the contract thus made. Dickey's language as to title, fairly interpreted, involved nothing but the legal implication that Hurd should give a merchantable title. His statement as to remitting $500 attached no new condition; it simply showed good faith. Specific performance could have been enforced against Dickey.

But I think the District Court erred in denying the plaintiff's motion to join the devisees under Hurd's will, who took and held the legal title to the land. Morgan's Heirs v. Morgan, 2 Wheat. 290, 298, 4 L. Ed. 242; 36 Cyc. 766; notes 93, 94, 95; 25 Ruling Case Law, p. 326, § 143.

The cross-appeal should be sustained; otherwise the decree below affirmed.

Rehearing Denied July 18, 1929.