# Richmond

W. H. HUFFMAN v. JACOB F. LANDES, ET ALS.

November 15, 1934.

Present, Campbell, C. J., and Holt, Epes, Gregory and Chinn, JJ.

The opinion states the case.

*Wayt B. Timberlake, Jr.,* and *Conrad & Conrad,* for the appellant.

*Charles Curry* and *Curry Carter,* for the appellee.

HOLT, J., delivered the opinion of the court.

In 1910 W. H. Huffman purchased a certain tract of land from W. L. Bashaw and others. It lay in Pastures Magisterial District, Augusta county, and was supposed to contain 240 acres. Later he added a six-acre tract bought from O. S. Wallace. Mr. Huffman wanted to secure a home near Bridgewater, Virginia, that he might take advantage of educational opportunities there available. In some manner this desire was brought to the attention of Mr. Jacob F. Landes, who was the owner of a fifty-one acre farm near that town. Landes wrote to Huffman and suggested that they trade or exchange farms. That letter is not in the record and we do not know just how it was worded. There was a reply, and on February 16, 1915, he visited him, spent the night, and in the morning was shown around and had pointed out to him all lines and corners. Huffman valued his farm at $18,000 and Landes valued his at $10,-000, and on the basis of this valuation they came to an agreement. Under it Landes went into possession on August 4, 1915. A subsequent survey showed that it contained about 200 and not 240 acres and to recover for that shortage this suit is brought. Landes claims that he would not have purchased upon the terms agreed upon had he known what the acreage was, while Huffman contends that they traded farms as the farms stood and that it was a transaction in gross.

The Bashaw deed to Huffman purported. to convey 240 acres, while lines and corners corresponded to those in the deed from Huffman to Landes. No survey was made when either of these deeds was executed, and this Huffman, or Bashaw, tract stood on an old survey, probably 100 years old.

After an agreement was reached a contract of sale of date February 19, 1915, was drawn up by Mr. Laird Conrad of Harrisonburg and executed by the parties interested. On July 16, 1915, Huffman and wife conveyed their farm to Landes, and by another deed of even date Landes and wife conveyed their farm to Huffman. These deeds were drafted by Mr. Alexander of Staunton. We have seen that Huffman's farm was valued at $18,000 and the Landes farm at $10,000. For this difference in values agreed upon Landes executed his eight bonds in the sum of $1,000 each, the first of which came due on January 17, 1917, and the last in 1924. Huffman assigned them and Landes paid the last of them in 1926.

On cross-examination Landes gives this account of the transaction:

"Q. And you wrote him telling him that you wanted to exchange a small farm for a larger one?

"A. I don't know that there was anything said about exchanging. I asked what he had to offer and told him what I had.

"Q. Tell him that you wanted to exchange a small farm for a larger one?

"A. I went and looked over his farm and he looked over mine before we—I had the price on his and he had the price on mine—there was no contract or bargaining made until after we looked at the places.

"Q. What I understand is that you had a small farm that you wanted to exchange for a larger one and he had a large farm that he wanted to exchange for one near Bridgewater?

"A. Yes, sir.

"Q. After you looked over the places, you agreed that there was $8,000 difference in the values?

"A. Yes, sir.

"Q. Willing to exchange for $8,000 to boot?

"A. Yes, sir.

"Q. That was the boot you were to pay him?

"A. Yes, sir.

"Q. You had looked over his farm and he had looked over yours?

"A. Yes, sir.

"Q. You and your son and daughter went to Mr. Huffman's near Craigsville?

"A. Yes, sir.

"Q. Stayed there all night?

"A. Yes, sir.

"Q. The next day went over the place as you have indicated and he pointed out the fences and the corners?

"A. Yes, sir.

"Q. Did Mr. Huffman tell you that his deed for the old Bashaw place called for 240 acres and the other tract called for six acres, or 246 acres all together?

"A. Yes, sir."

Elsewhere he said that he took the Landes farm as a down payment on his own. Afterwards Landes sold off from this Bashaw farm two small lots together containing something like twenty acres. Later he turned over the residue for sale to an auction company, The Galax Realty and Auction Company, and at its instance a survey was made. The surveyor completed his blueprint and calculations on April 17, 1928, and it was then for the first time that there was a definite ascertainment of shortage. Sale was made by this auction company on that date to a would-be purchaser for $19,000. This purchaser failed to comply and the sale fell through. Two days later Landes consulted counsel who undertook to secure an accounting. Huffman denied liability, in consequence of which this suit was instituted in February following.

Landes concedes that he had suspected the acreage would not hold out though he is not able to say when he first reached this conclusion. Certain fields appeared to be too

small, and "a long while I was farming it" drill measures led him to the same conclusion.

Huffman in part testified as follows:

"Q. Did you, or did you not show him your deed?

"A. Yes, sir.

"Q. Did or did not Mr. Landes look over your property?

"A. Yes, sir, he did.

"Q. When was that and how was it done?

"A. He walked out and I pointed out the corners and lines, what I had been told. I told him I had never surveyed it; just traded it as I had bought it; it had been on record for quite a while, about 240 acres of it had been on record seventy some years; I did not know whether it had been surveyed since or not; I did not do it myself."

The Huffmans did not know Mr. Conrad but were introduced to him by Landes, who stated their business, and by way of introduction, according to Mrs. Huffman's evidence, said, "Mr. Huffman and I have traded farms." Thereupon the contract of February 19, 1915, was drafted. It contains this recitation:

"This contract of sale, made and entered into this 19th day of February, 1915, by and between W. H. Huffman and Ella M. Huffman, parties of the first part, and J. F. Landes and Sallie A. Landes, parties of the second part:

"Witnesseth that for and in consideration of $1 cash in hand paid by the parties of the first and second part, each to the other, and of the provisions of this contract, the said parties of the first part do hereby agree to sell and do sell to the said J. F. Landes, and he agrees to purchase, that certain tract of land (originally two tracts), containing two hundred and forty-seven acres, more or less, situated in Augusta county at Craigsville, Pastures District, adjoining O. S. Wallace, Virginia Portland Cement Company and others, for the sum of eighteen thousand dollars, upon the terms hereinafter indicated.

"And the said parties of the second part do hereby agree to sell and do sell unto the said W. H. Huffman, and he agrees to purchase, that certain tract of land containing

fifty-one acres, more or less, situated in Rockingham county near Bridgewater, Virginia, * * *."

In the deed from Huffman to Landes of date July 16, 1915, this appears:

"The parties of the first and second parts (Huffman and Landes) having exchanged farms as more fully hereinafter set out, and the additional consideration of eight thousand dollars ($8,000)."

It closes with this recitation:

"The parties of the first and second parts by this deed and the deed referred to made by Jacob F. Landes have exchanged farms, and the consideration named in this deed, eight thousand dollars ($8,000) is the consideration in addition to the farm this day conveyed to William H. Huffman by Jacob F. Landes."

On the same day the deed from Landes to Huffman was executed. It sets out the fact that Landes had sold his fifty acre farm to Huffman with general warranty of title and contains this statement as to the nature of the transaction:

"The parties of the first and second parts have this day exchanged farms. The party of the second part conveyed to Jacob F. Landes his farm of two hundred and forty-six acres (246); the farm hereby conveyed being taken in exchange as part payment on the said two hundred and forty-six (246) acres of land, this day conveyed to Jacob F. Landes by William H. Huffman and wife, the two deeds being a contemporaneous transaction."

Alexander, the draughtsman, knew nothing of what had gone before. The idea that there had been an exchange of farms and not an ordinary sale must necessarily have been gathered from what the parties told him when he wrote the deed.

These deeds make up the contract in final form.

■ "In the absence of fraud or mistake in the instrument itself, the rule is universal, applicable to deeds as well as to all other contracts, that prior stipulations and understandings are merged in the final and formal contract

executed by the parties, and when a deed has been delivered and accepted as performance of an antecedent contract to convey, the contract is merged in the deed." *Charles* v. *McClanahan*, 130 Va. 682, 108 S. E. 858, 859; 23 C. J. 203. Parol evidence, memoranda and preceding agreements can only be received to make plain things which are obscure. *King* v. *Commercial Finance Co., ante,* p. 260, 175 S. E. 733, decided September 20, 1934.

When a farm is sold and described as containing any certain number of acres, the clear presumption is that the sale was by the acre and not in gross. Sales in gross have been described as contracts of hazard and are not favored. *Benson* v. *Humphreys*, 75 Va. 196; *McComb* v. *Gilkeson*, 110 Va. 406, 66 S. E. 77, 78, 135 Am. St. Rep. 944; *Hall* v. *Graham*, 112 Va. 560, 72 S. E. 105, Ann. Cas. 1913B, 1257.

Such contracts, however, are not discountenanced by the law, and will be enforced when reasonably and clearly established. *Cunningham* v. *Millner*, 82 Va. 526. Judge Harrison has thus stated the law in *McComb* v. *Gilkeson, supra:*

"Whether it be a contract in gross or for a specific quantity depends, of course, upon the intention of the contracting parties, to be gathered from the terms of the contract and all the facts and circumstances connected with it, but in the interpretation of such contracts the courts, not favoring contracts of hazard, will always construe the same to be contracts of sale per acre, wherever it does not clearly appear that the land was sold by the tract and not by the acre. *Berry's Ex'x* v. *Fishburne,* 104 Va. 459, 51 S. E. 827; *Watson* v. *Hoy,* 28 Gratt. [69 Va.] 698."

With this satisfactory statement of the law we are content to rest.

Huffman had no desire simply to sell his farm and there is no reason to believe that he would have parted with it except to secure another near Bridgewater. His purpose was well known. Nor is there any reason to believe that Landes wanted to give up his unless he could get another.

It is not necessary for us to determine if all the common

law requirements for an "exchange" of properties appear. It is important that the intent be made manifest. Certainly these men thought that there was an exchange and said so in their deeds. It was not possible for them to express their purpose in more solemn form. Huffman's farm was worth more and so Landes was willing to pay him boot, but this did not affect their purpose. In its essentials the transaction was as simple as a horse trade.

Lines and corners were pointed out. Huffman made no representation as to acreage beyond saying that the old Bashaw deed called for 240 acres (see *Wells* v. *Lagoria*, 112 Va. 522, 71 S. E. 713), and while the use of the words, "more or less" is not sufficient to change the character of the sale, yet, when the contract is to sell the farm as a whole, they do imply a waiver of warranty as to quantity, provided, of course, that it was understood that the buyer was to get the farm as it stood as a whole. (*Pendleton's Ex'rs* v. *Stewart*, 5 Call [9 Va.] 1 [2 Am. Dec. 583]).

Moreover the $8,000 boot money is not based upon any acreage valuation.

In *Emerson* v. *Stratton*, 107 Va. 303, 58 S. E. 577, 578, the court said:

"The price by the acre is not stated in the deed, but the round sum of $5,400 is given as the consideration for the land conveyed. When the purchase money for land is not an equi-multiple of the number of acres, it is, at least, persuasive evidence that the contract was not by the acre. *Keyton's Adm'x* v. *Brawford's Ex'rs*, 5 Leigh [32 Va.] 41, 50; *Jones* v. *Tatum* [19 Gratt. (60 Va.) 720], *supra; Farrier* v. *Reynolds*, 88 Va. 141, 147, 13 S. E. 393."

It is perfectly true in this case that time does not work an estoppel, nor can laches be relied upon to prevent a recovery. *Shirley* v. *Van Every*, 159 Va. 762, 167 S. E. 345. There has been no change in the condition of the parties, but long acquiescence after there was reason to believe that the acreage would not hold out is evidence bearing upon intention. It was not until the $19,000 auc-

tion sale fell through and after he had consulted counsel that Landes took action.

The cumulative effect of these several considerations leads us to the conclusion that he took the Huffman farm as it stood and intended to take it as it stood. This conclusion does not lead to inequitable results. In the language of a witness he seemed "plumb well pleased with his farm" after he moved upon it. Independent of acreage, he made, as he had a right to do, a good bargain.

There is nothing in the evidence to suggest fraud.

In reaching this conclusion we have not overlooked the weight that attaches to a commissioner's report affirmed by the trial court. Here, however, there is no material conflict in evidence on essential matters and so the cause comes to us with that presumption only which attaches to every judgment questioned on appeal.

For reasons stated, we are of opinion that the decree appealed from should be reversed, and it is so ordered.

*Reversed.*